**STATE of Delaware, upon the relation of William J. MULRINE, Plaintiff,**

**v.**

**William G. DORSEY, William Satterthwaite and Robert P. Shaw, constituting the Directors of the Department of Public Safety of the City of Wilmington, Defendants.**

Superior Court of Delaware, New Castle.

March 19, 1970.

Bernard Balick, Wilmington, for plaintiff.

Stanley T. Czajkowski, Special Asst. Solicitor, Wilmington, for defendants.

## OPINION

CHRISTIE, Judge.

In this action plaintiff seeks a writ of mandamus directing defendants as the Directors of the Department of Public Safety of the City of Wilmington (as such department was constituted in 1961) to grant a retirement pension to plaintiff.

After the suit was filed plaintiff plead guilty to the crime of manslaughter and was sentenced to serve five years in prison.

The suit was not pursued while he was in prison nor was it dismissed for lack of prosecution. When plaintiff was released he did not reactivate the case and through administrative oversight the case was not dismissed by the Court for failure to prosecute.

After the case finally came up on the annual calendar of all pending cases, plaintiff appeared through new counsel and cross motions for summary judgment were filed to bring the issues before the Court.

Defendants' successor, the Department of Public Safety, has appeared through the City Solicitor without insisting that a formal substitution of parties be made. The Department has sought a decision on the merits without pressing a motion to dismiss the case on account of the many years of inaction on the part of plaintiff.

Plaintiff was appointed a patrolman by the Bureau of Police on January 1, 1940, and continued in that employment until he voluntarily resigned on February 7, 1951. On December 9, 1951, plaintiff requested reinstatement in the Bureau of Police by means of a letter addressed to the Directors of the Department of Public Safety. The Directors, at a meeting held December 12, 1951, approved plaintiff's request for reinstatement with full seniority. Plaintiff again became a member of the Bureau of Police on January 1, 1952. He states that he did this in reliance upon the representations that were made to him that his pension eligibility would be calculated upon his original date of appointment on July 1, 1940.

On January 16, 1952, the Trustees of the Police Pension Fund requested the Secretary of the Fund to inquire of the Department of Public Safety concerning the terms under which plaintiff was to be reinstated as a participant in the Police Pension Fund. On February 20, 1952, the Trustees of the Police Pension Fund, acting on information received from the Department of Public Safety, permitted the readmittance of plaintiff to participation in the Police Pension Fund with full seniority.

At the meeting of February 20, 1952, the Trustees directed the Secretary of the Pension Fund to calculate the deficiency caused by the plaintiff's failure to contribute the usual 4% of salary to the Pension Fund during his absence from February 7, 1951, to January 1, 1952. The Secretary of the Pension Fund calculated this deficiency

to be $117.48. Plaintiff was requested by the Secretary of the Police Pension Fund to execute an authorization permitting the amount of the deficiency ($117.48) to be deducted. Deductions were thereafter made from plaintiff's salary at the rate of 70 cents each bi-weekly payday.

Plaintiff continued to serve and to make the contributions to the fund. Finally after 8½ more years he applied to the Directors of Public Safety for retirement on pension effective July 1, 1960. On January 9, 1961, the Directors denied plaintiff's application on the ground that his service had not been continuous and advised plaintiff he would not be eligible for retirement until January 1, 1972.

Thereafter plaintiff continued to serve until December 28, 1961, when plaintiff was arrested on a charge of first degree murder. He was suspended without pay on that date. The plaintiff, on June 13, 1962, entered a plea of guilty in the Superior Court to a reduced charge of manslaughter and was sentenced to five years imprisonment. The Bureau of Police then charged plaintiff with a violation of the Bureau of Police, Rule 580, Section 34, which provides for the possible penalty of suspension, fine, overtime, reprimand or dismissal for any member of the Bureau violating any criminal law or city ordinance. On July 25, 1962, after notice to plaintiff, the Police Trial Board found the plaintiff guilty as charged and dismissed him from the Bureau of Police as of December 29, 1961, the first working day subsequent to the date on which the manslaughter was committed.

Plaintiff maintains that he had qualified for the pension by July 1, 1960, and that the Directors were without authority to deny his request for retirement. He maintains that his service was continuous within the meaning of the statute and that in any event the Directors are estopped from denying him his pension since they reinstated him with the understanding that his service would be regarded as continuous.

Defendant says the service was not continuous and that any representation to plaintiff that his service would be regarded as continuous was contrary to the statutory provision of the pension law and cannot be binding. Defendant further contends that estoppel finds no application where it is invoked against a subdivision of the State to nullify the express requirements of a statute.

The pertinent statutory language as to the length and continuity of service required to be eligible for a police pension is as follows:

"* * * all members of the said Bureau who shall have performed faithful continuous service as such member for a period of at least twenty (20) years, shall, upon their own application, be placed upon the retired list whether they are disabled or not". 50 Del.Laws, Ch. 636, Sec. 1. (1956).

Similar language is found in the prior statutes except that 25 years of continuous service rather than 20 years was required. 32 Del.Laws, Ch. 113 (1921) and 29 Del. Laws, Ch. 128 (1917).

By the provisions of 38 Del.Laws. Ch. 127 (1933) the Department was authorized to "fix and regulate the salaries or compensation * * *" of employees and to make rules "for the proper control and management of said Department * * *", etc.

Pursuant to such authority the Department promulgated Rule 107 which reads as follows:

"Any member of the Department of Public Safety who shall resign of his own initiative may apply for reinstatement, in writing, to the Board of Directors of the Department of Public Safety within one year from the date his resignation was accepted".

It is clear that the Directors interpreted the statute and rule as giving them authority not only to reinstate the employee but

also to regard his service as continuous within the meaning of the pension statute upon his contribution of the funds he would have contributed but for his absence.

The difficulty with the Directors' interpretation as made at the time of reinstatement is obvious. The statute required continuous service for pension eligibility. The rule making authority included regulation of compensation in general but did not go so far as to provide that rules could waive or alter statutory pension provisions. Furthermore, Rule 107 dealt with reinstatement in employment not with pension eligibility.

■ Directors had no authority to alter any terms of pension eligibility set by statute. The word "continuous" is not defined in the statute and interruptions of service which will not be deemed to effect pension eligibility are not provided for in this pension law. Therefore, the word "continuous" must be given its usual and ordinary meaning. The word is defined as meaning "having continuity of parts, without break, cessation or interruption, without intervening space or time, uninterrupted, unbroken * * *" Websters New International Dictionary (2nd Edition).

■ A resignation followed by a ten month voluntary interruption of employment cannot by any ordinary use of words be deemed not to have interrupted continuous employment. The rules suggesting liberal interpretation of pension statutes do not come into play under the circumstances here present since there is no ambiguity in the statutory language.

Plaintiff further argues, however, that the Directors were estopped from denying him benefits since they had reinstated him with the express understanding that his service would be regarded as continuous upon payment of the contributions which he would have made if he had not interrupted his service. Plaintiff is able to cite no case where such estoppel has operated against the government to vitiate a statutory limitation.

■ The circumstances would seem to constitute a strong case for estoppel if the pension plan were contractual rather than statutory. But here the rights and duties of the parties were governed by an express statutory limitation. The defense correctly states that estoppel does not operate against the State or its subdivisions so as to nullify the limitations of a statute.

■■ There is much authority for the general rule that when the act of a government body is wholly ultravires there can be no application of the doctrine of equitable estoppel. See cases collected in 1 ALR2d 353. Here the Directors were without authority to do what they attempted to do.

Although plaintiff apparently was misled into thinking he would have a right to a pension when in fact he had no such right, this Court has no power to change the statute or to require defendants' successors to make amends for the error.

Interesting issues are raised as to whether or not the pension, if it had been earned by the date of the manslaughter, could be withheld in view of plaintiff's plea of guilty to the crime and his dismissal from the police force. The Court does not reach this issue since plaintiff has failed to establish that he was ever eligible for the pension.

Defendants' motion for summary judgment is granted. Plaintiff's motion is denied.

Judgment for defendants is entered and the case is dismissed.