**Michael AMICO, Plaintiff,**

v.

**NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Commission on Adult Entertainment Establishments, an entity within the State of Delaware, Department of Administrative Services, Division of Business and Occupational Regulation, and the State of Delaware, Defendants.**

**Civ. A. No. 82–513 CMW.**

United States District Court, D. Delaware.

April 6, 1984.

---

474

476

Philip B. Beardsley, Wilmington, Del., for plaintiff; Lewis H. Robertson of Levy & Robertson, Asbury Park, N.J., of counsel.

Jonathan B. Taylor and Brian A. Sullivan, of New Castle County Law Dept., Howard M. Berg and Stephen F. Dryden of Berg & Associates, Wilmington, Del., for defendant, New Castle County.

John J. Polk, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants, State of Del. and Com'n on Adult Entertainment Establishments.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that defendants have unconstitutionally violated his first amendment rights and the first amendment rights of the citizens of New Castle County by refusing to grant plaintiff a permit to open an adult entertainment center. Defendants have based their refusal on several zoning ordinances adopted by New Castle County and designed to regulate the location of adult entertainment centers. The Court has dealt with parts of these ordinances in an earlier opinion, *see Amico v. New Castle County*, 571 F.Supp. 160 (D.Del.1983), and must now address other parts sought to be presently applied against plaintiff. Presently before the Court are defendants' second motion to dismiss and plaintiff's second motion for summary judgment. For the reasons discussed below, the Court denies the motion to dismiss and denies the motion for summary judgment.

### A. FACTS

For over five years now, plaintiff Michael Amico has unsuccessfully sought to open an adult entertainment center at 4010 North Du Pont Highway in New Castle

County, Delaware. Plaintiff intends to sell books, magazines, films and other sexually oriented materials and to offer live entertainment of a sexually explicit nature. On May 30, 1978, plaintiff formed Traxx Philadelphia Limited, Inc. (hereinafter "Traxx"), a Pennsylvania corporation, as a mechanism to operate his proposed business. Following the formation of Traxx, plaintiff entered into an oral lease with the owner of the property at 4010 North Du Pont Highway. In 1981 and in 1983, this lease was renewed through a written lease agreement signed by the landowner and Traxx.[1] In December of 1978, plaintiff applied to the Delaware Commission on Adult Entertainment Establishments to obtain a license to operate an adult entertainment center. On January 17, 1979, the Commission unanimously adopted an order denying plaintiff's license.

The State Commission denied plaintiff's license because plaintiff's proposed use failed to comply with New Castle County Ordinance 23–31(38),[2] which prohibited, *inter alia*, adult entertainment centers within 500 feet of any property used solely for residential purposes.[3] Following the denial of plaintiff's application, New Castle County made several changes in its laws regulating the licensing of adult entertainment establishments. On August 14, 1979, New Castle County Ordinance 79–72 was adopted, amending Ordinance 23–31(38) by further · prohibiting adult entertainment centers within 2800 feet of a church, school or other place of worship.[4] On August 12, 1980, New Castle County Ordinance 23–33(13) was adopted, further amending Ordinance 23–31(38) by restricting adult entertainment centers to C–3 zones (general business) and requiring an applicant to obtain a special permit from the County Council upon a showing that neighborhood uses would not be detrimentally affected and that relevant distance requirements would be met.[5]

---

1. Traxx has paid the rent on the premises for every month since June 1981 and for three to four months in 1979. *See* Affidavit of Michael Amico (Dkt. No. 86).

2. New Castle County Ordinance 23–31(38), as adopted on April 13, 1977, stated in pertinent part:

 (38) Massage Parlors which provide services on and/or off premises, adult book stores and adult entertainment centers shall not be permitted within 500 feet of any property used solely for residential purposes. No massage parlors, adult book stores and/or adult entertainment centers shall be permitted within 1,500 feet of each other.

 Ordinance 23–31(38) further restricted adult entertainment establishments to areas zoned C–1 (neighborhood shopping).

3. Apparently, the Commission's discovery of plaintiff's noncompliance was made through a letter written by New Castle County to the Commission. However, at the time of the Commission's initial denial of plaintiff's application, 24 *Del.C.* § 1610(a) had not yet been adopted. 24 Del.C. § 1610(a) states in pertinent part:

 [E]ach applicant or licensee seeking a license or renewal must affirmatively establish within their application that the location or proposed location of the place of business is in compliance with all applicable laws and ordinances.

 This statute, adopted shortly after the Commissions' initial denial of plaintiff's application, has the effect of preventing plaintiff from obtaining the state license needed to open his business until he receives a permit from New Castle County demonstrating compliance with applicable regulations. Thus the Commission apparently assumed that, even though 24 *Del.C.* § 1610(a) had not yet been adopted at the time of plaintiff's initial application, it still had the power to deny a license because of a failure by an applicant to comply with local regulations and ordinances.

4. As of August 14, 1979, Ordinance 23–31(38) read in pertinent part:

 (38) Massage parlors which provide services on and/or off premises, adult book stores and adult entertainment centers shall not be permitted within 500 feet of any property used solely for residential purposes, or within 2800 feet of a school, church or other place of worship. No massage parlors, adult book stores and/or adult entertainment centers shall be permitted within 1500 feet of each other.

5. Ordinance 23–33(13) reads in pertinent part:

 (13) Massage parlors which provide services on and/or off premises, adult bookstores, and adult entertainment centers shall be permitted as follows:

 (a) No such uses shall be permitted within 500 feet of any property used solely for residential purposes.

 (b) No such uses shall be permitted within 2800 feet of a school, church or other place of worship.

After plaintiff's initial application was denied, plaintiff appealed the decision of the Commission to the Superior Court of Delaware. On February 23, 1981, the Superior Court reversed the Commission's decision and ordered the Commission to grant Amico a license retroactively for the period between January 1979 and January 1980.[6] However, because of the subsequent adoption of 24 *Del.C.* § 1610(a) and New Castle County Ordinance 23–33(13), plaintiff was never able to open for business. On June 10, 1981, plaintiff's second application to the Commission was denied because of his failure to comply with Ordinance 23–33(13) as required by 24 *Del.C.* § 1610(a). Between June of 1981 and May of 1982, plaintiff tried various ways to secure a license including direct negotiations with the state. When it became clear that these methods would be ineffective, plaintiff in May of 1982 once again renewed his application for a license. On May 20, 1982, the Commission again informed him that it would not grant his application absent proof of compliance with New Castle County ordinances. Plaintiff applied to the County for certification of compliance in June of 1982. The County, however, refused to issue such a certification in light of the fact that plaintiff's proposed location was within 500 feet of property used solely for residential purposes.

The persistent refusal of defendants to issue the requested license resulted in this suit. Plaintiff filed his complaint on August 9, 1982. Plaintiff first attacked the constitutionality of the 500 foot residential spacing requirement and the special permit provisions of the New Castle County ordinances, alleging that the 500 foot residen-

tial spacing requirement violated the equal protection clause and that the special permit provisions constituted an invalid prior restraint on plaintiff's first amendment rights. This Court agreed and struck down the 500 foot residential spacing requirement of Ordinance 23–31(38) and Sections (a) and (d) of Ordinance 23–33(13). *See Amico v. New Castle County*, 571 F.Supp. 160 (D.Del.1983). Following this Court's opinion, both plaintiff and this Court assumed that the litigation was over and that plaintiff would be entitled to his license without further delay.

However, in its application for an order modifying the Court's Opinion, defendant New Castle County informed the Court and plaintiff that it had discovered that plaintiff's proposed location would be less than 2,800 feet from the Minquadale Assembly of God. Accordingly, defendants contended that the granting of a license to plaintiff would violate Ordinance 23–33(13)(b), as well as its predecessor Ordinance 23–31(38), each of which prohibited the location of adult entertainment centers within 2800 feet of a school, church or other place of worship. Faced with this new contention, plaintiff amended his complaint and challenged the severability, applicability and constitutionality of the church/school spacing requirements contained in the New Castle County ordinances. It is plaintiff's motion for summary judgment on his amended complaint that is presently before the Court.

Plaintiff essentially makes three arguments in support of his motion. First, plaintiff argues that the church/school

---

(c) No such uses shall be permitted within 1500 feet of each other.

(d) Prior to initiation of such uses, special permit to operate such uses shall be obtained from the County Council. Council shall grant such a permit following a public hearing if it is determined that the neighborhood uses will not be detrimentally affected by granting such a permit and the proposed use meets the distance requirements cited in subsections 13(a), (b) and (c). Any person aggrieved by a decision of the County Council shall have the right to appeal to the Superior Court.

**6.** The Superior Court reasoned that, under the Delaware Code, the Delaware Commission had no authority to deny an application for a license on the ground that the proposed use would violate a county ordinance. However, on July 11, 1980, 24 *Del.C.* § 1610(a) was adopted, which effectively changed the Code to require the Commission to deny any application absent proof of compliance with local rules and ordinances. Therefore, even though the Superior Court reversed the Commission, plaintiff was never able to open for business.

spacing requirement is not severable from those portions of the New Castle County ordinances previously declared to be unconstitutional. Since the church/school spacing requirement is not severable, plaintiff concludes that the Court's previous ruling striking down other parts of the ordinances requires the church/school spacing requirement to be stricken as well. Second, plaintiff argues that the church/school spacing requirement is not applicable against plaintiff since defendants are equitably estopped by their previous wrongful refusal to issue plaintiff a license. Because defendants denied plaintiff a license on the basis of an unconstitutional ordinance, and because plaintiff detrimentally relied on the wrongful action of defendants and therefore was unable to open his adult entertainment center prior to the adoption of the church/school spacing requirement on August 14, 1979, plaintiff concludes that defendants are equitably estopped from enforcing the church/school spacing requirement against him. Third, plaintiff argues that the church/school spacing requirement is unconstitutional because it violates the equal protection clause, the establishment clause, and the due process clause. Plaintiff concludes that he is entitled to injunctive and declaratory relief, damages, costs and attorney's fees.

In response to plaintiff's arguments, defendants have filed a motion to dismiss, based on 10 *Del.C.* § 8126, claiming that plaintiff's claim is barred by the statute of limitations. Defendants also dispute every argument advanced by plaintiff, concluding that the church/school spacing requirement is severable, that it is applicable to plaintiff, and that it is constitutional in all respects.

The Court, in deciding these issues, will first consider defendants' motion to dismiss, since that claim can be disposed of fairly easily. Then the Court will address the issues of severability and equitable estoppel. Finally, the Court will turn to the issues of constitutionality, addressing the equal protection clause, the due process clause and the establishment clause in turn.

### B. DEFENDANTS' MOTION TO DISMISS

As previously stated, in response to plaintiff's motion for summary judgment, defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), alleging that plaintiff's entire claim is barred by the statute of limitations contained in 10 *Del.C.* § 8126(a). 10 *Del.C.* § 8126(a) states:

(a) No action, suit or proceeding in any court, whether in law or equity or otherwise, in which the legality of any ordinance, code regulation or map, relating to zoning, or any amendment thereto, or any regulation or ordinance relating to subdivision and land development, or any amendment thereto, enacted by the governing body of a county or municipality, is challenged, whether by direct or collateral attack or otherwise, shall be brought after the expiration of 60 days from the date of publication in a newspaper of general circulation in the county or municipality in which such adoption occurred, of notice of the adoption of such ordinance, code, regulation, map or amendment.

Defendants conclude that, since plaintiff's complaint was not filed until August 9, 1982, well beyond 60 days after any of the ordinances at issue in this litigation were published, plaintiff's claim is barred. Plaintiff responds by arguing that 10 *Del.C.* § 8126(a) is not the appropriate statute of limitations to apply to this action, citing cases which hold that actions based on 42 U.S.C. § 1983 are governed by Delaware's three year statute of limitations set forth in 10 *Del.C.* § 8106.[7] Plaintiff also argues that 10 *Del.C.* § 8126(a) was never intended to apply to an action challenging

---

7. 10 *Del.C.* § 8106 provides in pertinent part: ... no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting in-

directly from the act of the defendant shall be brought after the expiration of three years from the occurring of the cause of such action....

the constitutionality of zoning ordinances and that, even if it was intended to so apply, it is inconsistent with the policies underlying a federal § 1983 cause of action and should therefore be ignored. Finally, plaintiff argues that, since he has alleged a continuing violation of his constitutional rights, this action could have been instituted at any time during which the alleged violation has taken place.

▪ The Court agrees with plaintiff that 10 *Del.C.* § 8126(a) does not bar plaintiff's claim. As both plaintiff and defendants correctly state, in civil actions arising under 42 U.S.C. § 1983, since Congress did not establish a statute of limitations or a body of tolling rules, the applicable period of limitations will ordinarily be the most appropriate one provided by the law of the state in which the federal court sits. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1162 (3d Cir.1979); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir.1977); *Blake v. Town of Delaware City*, 441 F.Supp. 1189, 1199 (D.Del.1977); *Marshall v. Electric Hose & Rubber Company*, 68 F.R.D. 287, 293 (D.Del.1975). The most appropriate period of limitations in this case is the three year period set out in 10 *Del.C.* § 8106; not the 60 day period set out in 10 *Del.C.* § 8126. Numerous cases have held that actions based on 42 U.S.C. § 1983 are governed by Delaware's three year statute of limitations. *See Trivits v. Wilmington Institute*, 383 F.Supp. 457, 461 (D.Del.1974); *Gordenstein v. University of Delaware*, 381 F.Supp. 718, 727 (D.Del.1974); *Marshall v. Electric Hose*

*and Rubber Company, supra,* at 293. Moreover, application of the 60 day period set out in 10 *Del.C.* § 8126 would be inconsistent with the federal policy of promoting the vindication of civil rights that underlies a cause of action based on 42 U.S.C. § 1983.[8] *See Board of Regents v. Tomanio, supra,* 446 U.S. at 485, 100 S.Ct. at 1795 (1980) ("considerations of state law may be displaced when their application would be inconsistent with a federal policy underlying the cause of action under consideration"); *Johnson v. Railway Express Agency, Inc., supra,* 421 U.S. at 465, 95 S.Ct. at 1722 (1975) (same); *Franklin v. City of Marks*, 439 F.2d 665, 669 (5th Cir. 1971) ("when Congress creates a right without a limitation, it is sometimes useful to resort to the fiction that the Congressional silence means that Congress expects the state rule to be applied. But it is unthinkable to use this fiction to impute to the ardent civil rights advocates in Congress a hundred years ago any intention to limit the Civil Rights Act of 1871 to a ten-day statute of limitations."). Since previous cases have held that actions based on 42 U.S.C. § 1983 are governed by the three year period of 10 *Del.C.* § 8106, and since the application of the 60-day period of 10 *Del.C.* § 8126 would effectively deter rather than vindicate the federal policy underlying actions based on 42 U.S.C. § 1983, the Court concludes that 10 *Del.C.* § 8126 is not applicable to this action seeking to redress alleged violations of plaintiff's first amendment rights.

▪ In any event, the particular statute of limitations that is applicable is not determinative since plaintiff has alleged unconstitutional conduct of a continuous nature. "In the case of a continuing violation, a plaintiff may file charges or institute an

---

**8.** It would be absurd to grant a plaintiff the right to challenge a zoning ordinance on the ground that it violates his first amendment rights and then limit that right by requiring him to institute an action within 60 days after publication of the ordinance in a local newspaper. The federal policy behind 42 U.S.C. § 1983 clearly mandates that plaintiffs have available to them a broad, or at the very least an adequate, opportunity to prepare for, investigate, and institute suits to prevent deprivations of civil rights under color of state law. A 60 day limitation period would not provide such an opportunity: at best, it would result in a number of hasty, ill-informed, and perhaps erroneous decisions to sue; at worst, it would deter or prevent a number of meritorious suits and encourage the deterioration of first amendment freedoms through the inability to challenge potentially unconstitutional zoning ordinances.

action at any time during which the alleged violation has taken place. Such a charge or action will not be barred by the applicable statute of limitations, even though some of the acts complained of occurred outside of the limitations period." *Guilday v. Department of Justice,* 451 F.Supp. 717, 723 (D.Del.1978). Since plaintiff has alleged that defendants' unconstitutional conduct persists to the present date, there can be no doubt that plaintiff's claim is not time barred, regardless of whether 10 *Del.C.* § 8126 or 10 *Del.C.* § 8106 applies. Accordingly, defendants' motion to dismiss is denied.

## C. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1. *The Church/School Spacing Requirement Is Severable From The Parts Of The Ordinances Previously Declared Unconstitutional By This Court.*

██ Whether the church/school spacing requirement is severable from those portions of the New Castle County ordinances already struck down by this Court as unconstitutional depends upon whether the County Council intended to have the church/school spacing requirement stand independently of those other provisions and whether the church/school spacing requirement standing alone is in fact capable of enforcement:

Separability questions are essentially questions of statutory construction, to be determined according to the will of the legislature or its manifested meaning. Judicial opinions are replete with avowals that separability is to be decided according to the legislative intent.

The problem is twofold: the legislature must have intended that the act be separable and the act must be capable of separation in fact. From the act itself the Court must find a manifest or apparent intent to deal with a portion of the

original subject matter irrespective of the validity of the remainder of the act. Where the act is such as to warrant the belief that the legislature would not have passed the act without the invalid parts, the whole act must be held inoperative. (cites omitted).

2 Sutherland, Statutory Construction, §§ 44.03 at 338 (4th ed. 1973) *See, e.g., State v. Dickerson,* 298 A.2d 761, 764–66 (Del.1972) (question of severability depends on legislative intent and whether statute can stand alone); *Reese v. Hartnett,* 73 A.2d 782, 784 (Del.Super.1950) (same). Here, plaintiff argues that the New Castle County Council intended all of its spacing restrictions on adult entertainment centers to function as an integrated whole and that the Council never intended to have the church/school spacing requirement stand alone in the event that the residential spacing requirement was declared invalid. Defendants argue that the church/school spacing requirement is capable of independent enforcement and that the Council intended to have it stand alone if other parts of the ordinances were declared invalid. The Court agrees with defendants.

There are several factors here which the Court has considered in determining whether the church/school spacing requirement is severable from those portions of the ordinances that have already been declared invalid. First, as defendants point out, there is no necessary connection between the invalid 500 foot residential spacing requirement and the 2800 foot church/school spacing requirement. These provisions are capable of standing independently of one another and, in fact, they have stood independently in the past.[9] Certainly, there can be no question that the church/school spacing requirement may further the County's asserted objective of protecting children from the negative effects of adult entertainment centers even in the absence of a residential spacing requirement. Sec-

---

9. As previously pointed out, the church/school spacing requirement was not adopted until August 14, 1979; the residential spacing requirement was adopted on April 13, 1977. Thus, the residential spacing requirement existed independently of the church/school spacing requirement for over two years.

ond, both the statutory language and other surrounding evidence suggest that the County Council intended that the various portions of the ordinances be severable from each other. "The several classes of proscribed conduct in the challenged section are stated not as dependent terms but as separate and distinct types of proscribed conduct. This is obvious in the use of 'or' in the identification of the separate types of conduct which were prohibited by this section." [10] *Jim Crockett Promotion, Inc. v. City of Charlotte,* 706 F.2d 486, 489 (4th Cir.1983). It is also obvious from the fact that the church/school spacing requirement was not a part of the original ordinance and was considered and adopted separately from the other provisions in the ordinance. Finally, the New Castle County Code contains an ordinance declaring the County Council's intention that "the sections, paragraphs, sentences, clauses and phrases of this Code are severable." [11] While this provision is not determinative of the present issue, it does lend further support to the Court's conclusion that the County Council intended the church/school spacing requirement to be severable from other portions of the County's zoning ordinances. *See generally* 2 Sutherland, Statutory Construc-

tion, § 44.11 at 356 (4th ed. 1973) (general separability statute treated merely as aid to interpretation and not as command). Therefore, the Court concludes that the County Council intended the church/school spacing requirement to be severable from the other portions of the ordinances zoning adult entertainment centers and that the church/school spacing requirement is an independent and separate provision capable of enforcement even in the absence of those provisions of the ordinances previously declared invalid.

2. *Defendants Are Not Equitably Estopped From Enforcing The Church/School Spacing Requirement Against Plaintiff.*

■ The Court has found no Delaware cases [12] which directly address the issue of whether a subsequently enacted zoning ordinance can be used to deny a license when the government has wrongfully refused (i.e., refused on the basis of an unconstitutional provision) to issue the license when it was applied for. Indeed, the Court has found no Delaware cases which demonstrate that the Delaware courts would even entertain claims of equitable estoppel against government entities engaged in

---

**10.** This separateness, apparent in Ordinance 23–31(38) ("... shall not be permitted within 500 feet of any property used solely for residential purposes, *or* within 2800 feet of a school, church or other place of worship...."), was made even more obvious when Ordinance 23–33(13) was adopted and the residential spacing and church/school spacing requirements were contained in separate subsections ("(a) No such uses shall be permitted within 500 feet of any property used solely for residential purposes. (b) No such uses shall be permitted within 2800 feet of a school, church or other place of worship.").

**11.** Section 1–7 of the New Castle County Code provides in relevant part:

[I]t is hereby declared to be the intention of the County Council that the sections, paragraphs, sentences, clauses and phrases of this Code are severable and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional or invalid by the valid judgment or decree of a court of competent jurisdiction, such unconstitutionality or invalidity shall not affect any of the

remaining phrases, clauses, sentences, paragraphs and sections of this Code.

**12.** While this suit is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988 provides that, in suits under § 1983 where the federal laws are "not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," the common law of the State in which the federal court sits is to be applied. Since there does not appear to be an overriding federal interest or a uniform federal rule of decision in the area of zoning estoppel, and since the source of plaintiff's alleged right to estop defendants is the common law estoppel doctrine, reference should be made to Delaware law. At least one federal court has looked to state law in a similar situation. *See Southern Co-Op Development Fund v. Driggers,* 696 F.2d 1347, 1354 (11th Cir.1983) (holding that where defendants' prior denial of application was unlawful, it would be inequitable to allow them to take advantage of a subsequently enacted zoning regulation, citing Florida cases). Therefore, the Court will refer to Delaware law in determining the issue of equitable estoppel.

land use regulation. Despite this lack of directly relevant authority, the Court concludes that the doctrine of equitable estoppel should not be applied against defendants in the present case given the important public policies at issue and plaintiff's failure to demonstrate that the Delaware courts would estop a government entity in the exercise of its zoning functions.

The Delaware courts, when deciding zoning disputes, have not referred to the doctrine of equitable estoppel. Instead, they have referred to two related and well-known doctrines typically applied in zoning disputes: the doctrine of vested rights and the law of nonconforming uses. *See, e.g., Shellburne, Inc. v. Roberts*, 224 A.2d 250 (Del.1966); *Willdel Realty, Inc. v. New Castle County*, 270 A.2d 174 (Del.Ch.), *aff'd.*, 281 A.2d 612 (Del.1970). Neither of these doctrines, however, support plaintiff's claim that the church/school spacing requirement cannot be applied against him.

In its traditional application, the nonconforming use doctrine does not protect proposed or partially constructed projects. The general rule is that for a use to be granted the protection of nonconforming status, it must have been in lawful physical existence on the operative date of the ordinance. *See generally* 1 Anderson, American Law of Zoning, § 6.10 (2d ed. 1976). Here, plaintiff has made no claim that his proposed adult entertainment center was in lawful physical existence at the time the church/school spacing requirement was passed and, therefore, the nonconforming use doctrine cannot support his claim.

Nor can the vested rights doctrine support plaintiff's claim. Under Delaware law, the acquisition of vested rights typically requires the issuance of a permit and

some substantial expenditure, obligation or change in relation to the land. *See Shellburne, Inc. v. Roberts, supra*, at 254 ("It is generally recognized that the issuance of a building permit does not, alone, confer any right against a later zoning change. Otherwise stated, a permit is not *per se* protected against a zoning change subsequently adopted. The acquisition of vested rights requires more. As of the time of the zoning change, there must have been a substantial change of position, expenditures, or incurrence of obligations, made lawfully and in good faith under the permit, before the landowner becomes entitled to complete the construction and to use the premises for a purpose prohibited by a subsequent zoning change...."). *See generally* 3 Rathkopf, The Law of Zoning and Planning, 57–7 (4th ed. 1980) (acquisition of vested rights requires good faith substantial change of position in reliance on permit validly issued). Here, plaintiff has paid the rent [13] and incurred certain other minor expenses relating to the proposed location. However, he has not obtained a license; nor has he made any substantial change in position by beginning construction, purchasing supplies, or incurring obligations in preparation for the proposed venture. Therefore, plaintiff has not alleged, and the Court does not find, that the vested rights doctrine supports plaintiff's claim.

Realizing that neither the vested rights doctrine nor the law of nonconforming uses supports his claim, plaintiff has relied on the doctrine of equitable estoppel, arguing that the subsequently enacted church/school spacing requirement should not be used to deny plaintiff a license when the government wrongfully refused to issue the license when plaintiff initially applied for it.[14] This argument is based on

**13.** According to plaintiff's affidavit (Dkt. No. 86) and deposition (Dkt. No. 57), rent has been paid for three to four months in 1979 and every month since June 1981. Plaintiff's tenancy is apparently month-to-month with the rental amount set at $1,000 per month.

**14.** There are a number of cases, outside of Delaware, which have held that an applicant is enti-

tled to receive a building permit, notwithstanding the subsequent enactment of a prohibitory zoning regulation, where the municipality was guilty of an arbitrary, unreasonable or wrongful delay or refusal to issue the permit when it was applied for. *See Southern Co-Op Development Fund v. Driggers, supra; Pokoick v. Silsdorf*, 40 N.Y.2d 769, 390 N.Y.S.2d 49, 358 N.E.2d 874 (1976); *Phillips Petroleum Co. v. City of Park*

the premise that, but for the wrongful refusal to issue the license, plaintiff would have acquired the license and entered into the substantial expenditures and obligations needed to acquire vested rights sufficient to preclude retroactive application of the church/school spacing requirement.[15] While plaintiff cites no Delaware case which directly supports his argument, plaintiff does argue that the Delaware courts would be willing to apply the doctrine of equitable estoppel in the circumstances of this case. The Court disagrees.

The apparent majority rule in the United States with respect to zoning estoppel has been set out in a number of cases and authorities as follows:

A local government exercising its zoning powers will be estopped when a property owner,

(1) relying in good faith,

(2) upon some act or omission of the government,

(3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired.

See Heeter, "Zoning Estoppel: Application of The Principles of Equitable Estoppel and Vested Rights To Zoning Disputes," 1971 Urb.L.Ann. 63, 66 (1971); Annot., 49 A.L. R.3d 13, § 3 at 26 (1973). However, while a majority of jurisdictions now demonstrate a willingness to entertain claims of equitable estoppel against government entities engaged in land use regulation, Delaware has given no indication that its courts would abandon the traditional rule that a government entity will not ordinarily be estopped in the exercise of its government functions. In fact, relevant Delaware cases suggest that the Delaware courts would not apply the doctrine of equitable estoppel against a local government exercising its zoning functions.

First, in all the cases in which the Delaware courts have either applied or refused to apply equitable estoppel to government entities, the courts have generally recognized the principle that a government typically should not be estopped in the exercise of its government functions. See McCoy v. State, 277 A.2d 675, 676 (Del.1971) (Ordinarily, a state is not estopped in the exercise of its governmental functions by the acts of its officers and estoppel is particularly inappropriate in criminal cases where welfare and safety of community are paramount considerations.); State v. Dabson, 217 A.2d 497, 501 (Del. 1966) (state is estopped from asserting claims against contractors where no exercise of government function involved); Conway v. Wolf Liquor Co., 200 A.2d 831, 834 (Del.1964) (state not estopped from asserting liability for liquor taxes where official had erroneously stated that a recent legislative act would not take effect until a later date; recognizing proposition that a state or its agencies cannot be estopped by the unauthorized acts of its officers); Allen v. Folsom, 372 A.2d 200, 203 (Del.Ch. 1976) (where county records failed to reflect that there were delinquent taxes owing against real property and where taxpayers relied on records in making purchase of property, county was estopped from asserting any tax or sewer liens; however, court notes that the rule limiting liability for acts governmental in nature is

Ridge, 16 Ill.App.2d 555, 149 N.E.2d 344 (1958); Dubow v. Ross, 254 App.Div. 706, 3 N.Y.S.2d 862 (1938). But see Town of Nottingham v. Lee Homes, Inc., 118 N.H. 438, 388 A.2d 940 (1978). See generally Annot., 50 A.L.R.2d 596, § 13 at 660–68 (1973) and cases cited therein.

15. Plaintiff has alleged that, "Had the license been granted by the Commission in December 1978 or January 1979, it would have taken four to six weeks to arrange for telephone and utility service, install the booths, projectors and shelving and to arrange for stock and supplies." Affi-

davit of Michael Amico (Dkt. No. 86). Since defendants have not filed counter-affidavits or produced any other evidence indicating that, had the license been granted, plaintiff would not have been open before the adoption of the church/school spacing requirement, the Court will accept plaintiff's allegations as true. Thus, for purposes of this summary judgment motion, there can be no question that plaintiff has established a prejudicial change of position in reliance on the acts or omissions of defendants.

a useful one, and should be applied in most situations); *State ex rel Mulrine v. Dorsey*, 264 A.2d 515, 518 (Del.Super.1970) (estoppel does not operate against state or its subdivisions so as to nullify the limitations of a statute). Since zoning and land use regulation are government functions, the Delaware courts would probably follow the traditional rule that estoppel cannot apply against the government defendants in this case. Second, in a case analogous to the present one, the Delaware courts apparently recognized the general rule that a zoning regulation may be retroactively applied to deny an application for a building permit even though the permit could have been lawfully issued at the time of the initial application.[16] *See Willdel Realty, Inc. v. New Castle County*, 270 A.2d 174 (Del. Ch.), *aff'd*, 281 A.2d 612 (Del.1970). Since the Delaware courts have permitted retroactive application of a zoning ordinance in a situation where the initial refusal to grant a license was allegedly based on an invalid ordinance, it seems unlikely that they would apply equitable estoppel here. Finally, the Delaware courts have qualified the general doctrine of equitable estoppel by recognizing the proposition that estoppel should not be invoked where to do so would operate to defeat the effective operation of a policy adopted to protect the public.[17] *See, e.g., McCoy v. State, supra. See generally* Cunningham, "Vested Rights, Estoppel and The Land Development Process," 29 Hastings L.J., 623, 651 (1978) (noting that zoning estoppel rule fails to consider this major qualification). Since the application of estoppel in this case would have some effect on the County's policy of protecting children against pornography in that it would permit the

operation of an adult entertainment establishment within 2800 feet of a school or a church, it seems unlikely that the Delaware courts would hold the defendants to be equitably estopped. Therefore, the Court will not apply the doctrine of equitable estoppel to prevent defendants from enforcing the church/school spacing requirement against plaintiff.

3. *Absent A Trial, The Court Cannot Rule That The Church/School Spacing Requirement Is Unconstitutional.*

Since the Court has denied defendants' motion to dismiss, and since the Court has ruled that the church/school spacing requirement is severable from the invalid portions of the County's zoning ordinances and may be applied against plaintiff, it becomes necessary to determine the constitutional issues raised by plaintiff's motion. Plaintiff has essentially made three arguments to support his claim that the church/school spacing requirement is unconstitutional. The Court will address plaintiff's argument based on the equal protection clause first, and then consider plaintiff's arguments based on the due process clause and the establishment clause. The Court concludes that, because there are factual issues relating to whether defendants were impermissibly motivated in passing the church/school spacing requirement and whether defendants' ordinances significantly restrict access to protected forms of first amendment activity, a trial will be necessary before the Court can determine the constitutionality of the church/school spacing requirement.[18]

16. In permitting retroactive application of a zoning regulation despite plaintiff's allegation that the prior regulation was invalid, the Court in *Willdel Realty, Inc. v. New Castle County* did not discuss the issue of estoppel. While the Court did not treat the issue in terms of the doctrine of estoppel, the fact that the Court permitted retroactive application of a zoning regulation even though it doubted that the prior emergency ordinance could have been validly used to deny plaintiff a permit suggests that the application of equitable estoppel would be inappropriate in this case.

17. The federal courts have long recognized this qualification to estoppel doctrine. *See U.S. v. California*, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); *Utah Power & Light Co. v. U.S.*, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

18. The Court notes that all of the federal cases addressing ordinances which contained church/school spacing requirements have not explicitly discussed the constitutionality of these requirements. Instead, these cases have generally invalidated the entire ordinance at issue on the grounds of overbreadth or substantial re-

### a. The Equal Protection Clause

The Court's previous opinion in this case held that the equal protection test used in the first amendment area requires that a municipality demonstrate that its zoning ordinance serves an important state interest and that the ordinance is narrowly drawn to serve that interest.[19] *See Amico v. New Castle County, supra,* at 167. Defendants contend that the church/school spacing requirement is a narrowly drawn ordinance designed to protect children from the negative effects of adult entertainment centers.[20] Plaintiff contends that the state interest at issue here is not the protection of children but rather the protection of neighborhoods and residential areas. Plaintiff concludes that, since the church/school spacing requirement would prohibit adult entertainment centers from locating within 2800 feet of a church or school even though that church or school was not located in a residential area, the ordinance is not narrowly drawn to further a substantial state interest. The Court concludes that there are sufficient facts in the record to infer that the church/school spacing requirement is a narrowly drawn ordinance which serves the substantial state interest of protecting children from the negative effects of adult entertainment centers.

In reaching this conclusion, the Court has considered a number of subsidiary issues relevant to plaintiff's equal protection clause claim. These issues include: first, whether the County has produced sufficient evidence for the Court to infer that there was an underlying factual basis, actually relied on, to support its conclusion that the ordinance, narrowly drawn, furthers an important state interest which a narrower restriction would not; second, whether the ordinance, as a matter of law, is so overbroad as to unnecessarily interfere with first amendment freedoms; and third, whether the County was actually motivated by the asserted state interest and was not simply using that interest as a pretext to suppress pornography. Each of these subsidiary issues will be discussed in

striction of access. *See Alexander v. City of Minneapolis,* 698 F.2d 936 (8th Cir.1983); *Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982); *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659 (8th Cir.1981); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir.1981); *Central Ave. News, Inc. v. City of Minot,* 651 F.2d 565 (8th Cir.1981); *Genusa v. City of Peoria,* 619 F.2d 1203 (7th Cir.1980); *CLR Corp. v. Henline,* 520 F.Supp. 760 (W.D. Mich.1981), *aff'd.,* 702 F.2d 637, 639 (6th Cir. 1983); *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207 (N.D.Ga.1981); *Ellwest Stereo Theatres, Inc. of Texas v. Byrd,* 472 F.Supp. 702 (N.D.Tex.1979); *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696 (N.D.Fla.1978). The Court has, however, found one non-federal case which explicitly addressed the constitutionality of a church/school spacing requirement. *See Kacar, Inc. v. Zoning Hearing Board,* 60 Pa. Cmwlth. 582, 432 A.2d 310 (1981).

**19.** This conclusion was based on a number of lower court cases and on language from the following three Supreme Court opinions: *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68–70, 101 S.Ct. 2176, 2182–83, 68 L.Ed.2d 671 (1981) ("[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest... [T]he Court must not only assess the substantiality of the governmental interest asserted but also determine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment."); *Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980) ("The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms....") (cites omitted); *Young v. American Mini-Theatres, Inc.,* 427 U.S. 50, 79–80, 96 S.Ct. 2440, 2456–57, 49 L.Ed.2d 310 (1976) (Powell, J., concurring), *citing United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) ("[A] government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.").

**20.** The Court has previously held, and plaintiff does not dispute, that the protection of children from the negative effects of adult entertainment centers is a substantial state interest. *See Amico v. New Castle County, supra,* at 168.

the context of plaintiff's motion for summary judgment.[21]

### (i) *Factual Basis*

 Considering the first issue mentioned above in the context of plaintiff's motion for summary judgment, the Court cannot say, as a matter of law, that there is not a sufficient underlying factual basis to support the County's conclusion that the church/school spacing requirement is narrowly drawn to further the asserted interest of protecting children from the adverse effects of adult entertainment centers. Numerous cases have held that *some* factual basis is required if the legislative conclusion that the ordinance is narrowly drawn to further a substantial state interest is to be upheld. *See Basiardanes v. City of Galveston, supra,* at 1215 ("The city must buttress its assertion with evidence that the state interest has a basis in fact and that the factual basis was considered by the city in passing the ordinance."); *Avalon Cinema Corp. v. Thompson, supra,* at 1661 (some empirical basis required); *Keego Harbor Co. v. City of Keego Harbor, supra,* at 98 (factual support for zoning restriction required); *CLR Corp. v. Henline, supra,* 520 F.Supp. at 768 (need "actual state interests, actually considered upon a factual basis before the legislative body at the time the action is taken, not speculation in the course of subsequent litigation."). But these cases shed little light on the precise quantity and quality of factual support necessary. In this case, there is evidence in the record to suggest that the

Council relied on information upon which it was entitled to rely and which, when viewed as a whole, constitutes a sufficient underlying factual basis to support the conclusion that the church/school spacing requirement is narrowly drawn to further the asserted state interest.

First, as plaintiff's counsel conceded at oral argument, the Council was entitled to rely on its previous findings concerning the demonstrable adverse effects of adult entertainment centers. These findings, based on evidence presented at the February 8, 1977 meeting of the Council, included the following:

(1) adult book stores caused decreases in property values;

(2) strangers filtered into the communities located near such establishments, which caused residents to feel unsafe;

(3) book store patrons parked their cars on neighborhood streets which caused parking problems;

(4) men were seen urinating and masturbating in the parking lots;

(5) trash, especially beer cans, was thrown from parking lots onto residential property; and

(6) automobiles and trucks of book store patrons were directly involved in accidents involving Midvale residents.

*See Amico v. New Castle County, supra,* at 168. At least some of these findings support the County's conclusion that there are demonstrable adverse effects caused by adult entertainment establishments to which children should not be exposed.[22]

---

**21.** Since this is a motion for summary judgment, the Court may grant the motion only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must resolve any doubt as to the existence of genuine issues of fact against the moving party and resolve any reasonable inferences from the facts in favor of the party against whom the judgment may be entered. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982); *Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters and Joiners,* 676 F.2d 81, 84

(3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981).

**22.** Certainly, the Council did not have to wait for local children to suffer from the negative effects of adult entertainment centers before it was entitled to take action. The Council was entitled to rely on the experience and findings of other legislative bodies and on its previous findings as a basis for taking action to protect children from exposure to adult entertainment centers. *See Genusa v. City of Peoria,* 619 F.2d 1203, 1211 (7th Cir.1980) ("... a city need not await deterioration in order to act. A legislative body is entitled to rely on the experience and findings of other legislative bodies as a basis for action."). Given the almost universal recogni-

Second, the Council was entitled to rely on the joint recommendation of the Department of Planning and the Planning Board to City Council, dated July 30, 1979, which states in pertinent part:

The Code now prohibits massage parlors, adult book stores, etc. within 500 feet of residentially zoned properties. This ordinance would further prohibit them within 2800 feet of schools and churches. Such "adult" uses are generally incompatible with places of worship, and they should be a significant distance from schools, in order to minimize adverse effects on students.

See Plaintiff's Opening Brief in Support of His Second Motion For Summary Judgment (Dkt. No. 77) at A-48. This statement suggests that the asserted state interest of protecting children from the negative effects of adult entertainment centers was in fact considered by the Council when it enacted the ordinance. It also suggests that the Council considered the negative effects of adult entertainment centers in determining that churches and schools should be insulated from this kind of commercial activity.

Third, the Council was entitled to rely on the remarks of Councilman Farley, sponsor of the ordinance, at the August 14, 1979 Council meeting. Councilman Farley made it clear that the church/school spacing requirement was intended to protect children and to insulate schools and churches from the negative effects of adult entertainment centers.[23] His statements suggest that the Council was aware of and in fact considered the asserted state interest of protecting children from the negative effects of adult entertainment centers.

Finally, the Council was entitled to rely on the matters discussed at the joint hearing of the Department of Planning and the Planning Board held on July 10, 1979. Much of the testimony at the hearing evidenced a concern for the dangers that adult entertainment centers could pose to children.[24] See Plaintiff's Opening Brief in

---

tion of the power of states and localities to zone undesirable uses away from churches and schools and to protect children against exposure to pornography, the Council's failure to provide a more detailed record of the demonstrable adverse effects of adult entertainment centers is perhaps understandable. See Larkin v. Grendel's Den, 459 U.S. 116, 121, 103 S.Ct. 505, 509, 74 L.Ed.2d 297 (1982); ("Plainly, schools and churches have a valid interest in being insulated from certain kinds of commercial establishments, including those dispensing liquor. Zoning laws have long been employed to this end, and there can be little doubt about the power of a state to regulate the environment in the vicinity of schools, churches, hospitals and the like by the exercise of reasonable zoning laws."); New York v. Ferber, 458 U.S. 747, 756–64, 102 S.Ct. 3348, 3354–58, 73 L.Ed.2d 1113 (1982) (recognizing that a state's power to protect children against exposure to pornography is considerably broader than its power to regulate exposure of adults to pornography); Cf., FCC v. Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) (government's interest in shielding children from exposure to indecent language justifies restraint on broadcaster's freedom of speech). The Council's evidence of adverse effects of adult entertainment centers, combined with its apparent recognition that exposure to these effects would be detrimental to the well-being of local children, provides a sufficient factual basis for its conclusion that adult entertainment centers should be located away from schools and churches. While a more detailed factual basis would be desirable, the Court cannot say that the Council's factual record is inadequate to support its conclusion that the asserted state interest of protecting children would be served by the church/school spacing requirement.

**23.** Councilman Farley stated:

"... This is not an ordinance against pornography. It is not our role to legislate in that area. This is an ordinance dealing with what I consider, and I hope Council will this evening, an added dimension to a properly planned community.... I see it as poor planning to have adult book stores, massage parlors, conversation parlors where they can have what I consider, and I hope Council will, a negative influence on a young community or on a religious community."

See Defendant New Castle County's Answering Brief (Dkt. No. 82) at 21.

**24.** Much of the testimony at the hearing also evidenced a concern with the "immoral" or "indecent" nature of adult entertainment centers. This testimony lends some support to plaintiff's claim that the Council, bowing to pressure from various citizens and religious groups, was primarily motivated by a desire to suppress pornography. However, the issue of motivation is a factual one on which the Court expresses no opinion at this time.

Support of His Second Motion for Summary Judgment (Dkt. No. 77) at A–32 to A–47. The transcript of the hearing thus suggests that the Council was aware of and in fact considered the asserted state interest of protecting children from the negative effects of adult entertainment centers. Therefore, the Court concludes that the transcript of the hearing on July 10, 1979, the statements of the sponsor of the ordinance made at the August 14, 1979 joint recommendation by the Department of Planning and the Planning Board, and the evidence of adverse effects of adult entertainment centers presented at the February 8, 1977 Council meeting all support the Court's conclusion that defendants' asserted interest of protecting children from the negative effects of adult entertainment centers has a basis in fact and that those facts were actually considered by the Council when it enacted the ordinance. *See Amico v. New Castle County, supra,* at 168.

The record also permits the inference that the Council considered whether the church/school spacing requirement was narrowly drawn to further the asserted state interest. In particular, the transcript of the hearing on July 10, 1979, and the statements of Councilman Farley at the August 14, 1979 Council meeting indicate that the Council was concerned with the distance limitation of 2800 feet and whether that distance was sufficient to achieve the ordinance's intended goal without violating any constitutional guarantees. The Council apparently concluded that the 2800 foot limitation was sufficient to protect the interests of children at schools and churches without significantly restricting access to adult entertainment centers in New Castle County. *See* Plaintiff's Opening Brief in Support of His Second Motion for Summary Judgment at A–37 to A–39 (remarks of Dr. Davis and Dr. McCoy). Thus, the Court cannot hold that there is an insufficient factual basis to support the Council's conclusion that the church/school spacing requirement is a narrowly drawn ordinance designed to protect children attending churches and schools from the neg-

ative effects of adult entertainment centers.

### (ii) *Overbreadth*

■ Considering the issue of overbreadth in the context of plaintiff's motion for summary judgment, the Court cannot say, as a matter of law, that the church/school spacing requirement is overbroad and constitutes an unnecessary interference with first amendment freedoms. As Justice Powell stated in his concurring opinion in *Young v. American Mini-Theatres, supra,* 427 U.S. at 79–80, 96 S.Ct. at 2456–57, the critical inquiry in this area is whether the incidental restriction on first amendment freedoms is greater than is essential to the furtherance of the asserted state interest. *See generally United States v. O'Brien, supra.* In this case, plaintiff argues that the ordinance is overbroad because of its 2800 foot distance limitation and because it is essentially unrelated to the state interest of protecting neighborhoods. Defendants respond by arguing that the distance limitation, by itself, is not determinative and that the ordinance is substantially related to the asserted interest of protecting children attending schools and churches. The Court agrees with defendants.

■ First, the fact that the 2800 foot distance limitation is more burdensome than other distance limitations in similar ordinances does not, by itself, render the limitation invalid as being overbroad. The determinative question is whether the ordinance has the effect of unnecessarily interfering with or significantly restricting access to a protected form of first amendment activity. *See Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696, 701–02 (M.D.Fla.1978) ("That the Jacksonville limitations are more burdensome than Detroit's does not, of course, in itself render them invalid. The critical inquiry is the *effect* the limitations have on the exercise of first amendment rights."). The issue of significant restriction of access is a factual question that can only be determined by trial; therefore, the fact that the distance

limitation chosen was 2800 feet cannot, standing alone, render the ordinance overbroad.

Second, it is difficult to conclude that a less intrusive ordinance would adequately protect children at schools and churches from exposure to the negative effects of adult entertainment centers since any decrease in the distance requirement would necessarily increase the risk of exposure. The 2800 foot distance limitation was apparently adopted by the Council because that distance approximates a half-mile limitation which the Council felt was needed to insulate children attending, or being transported to or away from, schools or churches from the negative effects of adult entertainment centers.[25] Again, even if the Council had chosen a distance limitation of 500 feet, the critical inquiry in determining whether the ordinance was overbroad would not be the number of feet chosen but rather the unnecessary interference with or restriction of access to a protected form of activity. Since the Court cannot conclude, as a matter of law, that a less intrusive means would adequately protect the asserted interest, the Court rejects plaintiff's argument that the distance chosen necessarily requires a finding that the ordinance is overbroad.[26]

 Nor can the Court accept plaintiff's argument that the ordinance is overbroad because it is essentially unrelated to the state interest of protecting neighborhoods. As previously stated, the protection of neighborhoods is not the state interest asserted by defendants on this motion. The defendants have asserted an additional and undisputably compelling state interest in protecting children attending schools and churches from the negative effects of adult entertainment centers. A church/school spacing requirement is substantially related to that interest. Since children are present at churches and schools regardless of whether those churches and schools are located in neighborhoods, the Court cannot conclude that the ordinance is overbroad simply because it protects schools and churches that are not located in neighborhoods. Therefore, the Court, absent a showing of significant restriction of access to protected forms of activity, finds that the church/school spacing requirement does not constitute an unnecessary interference with first amendment freedoms.

(iii) *Motivation*

 Considering the issue of impermissible content motivation in the context of plaintiff's motion for summary judgment, the Court finds that the issue is a factual question upon which it would be inappropriate to rule at this time. The Court is well-aware that it must be alert to the possibility of using the power to zone as a pretext for suppressing expression, *see Young v. American Mini-Theatres, supra,* 427 U.S. at 84, 96 S.Ct. at 2459, and that, as plaintiff points out, there are numerous circumstances in this case requiring the

---

**25.** Many children living within half a mile of schools and churches walk to school and Sunday School, often unaccompanied by their parents. Even those children who are bussed or driven to school or church risk exposure to the adverse effects of an adult entertainment center if such uses are permitted within half a mile of schools and churches since many schools and Sunday Schools have recess or study periods during which children are unsupervised. Thus, there are fairly obvious reasons for requiring adult entertainment centers to be located significant distances away from schools or churches.

**26.** Other than choosing a shorter distance limitation, the Court finds it difficult to see how the ordinance could have been more narrowly drawn. Perhaps the ordinance could have explicitly limited itself to those schools and churches with children in attendance on a regular basis; that, however, would have been redundant since virtually all schools and churches have regular periods of instruction with children in attendance. In any event, the ordinance could be subject to a limiting construction by the state courts expressly interpreting the church/school spacing requirement to require the presence of children on a regular basis, and therefore, this Court cannot, at this time, conclude that the ordinance is overbroad. *See, e.g., Central Ave. News Co. v. City of Minot,* 651 F.2d 565, 567 (8th Cir.1981) (federal court should not place itself in position of holding a state statute, not yet construed by state courts, to be unconstitutional where a permissible construction of the statute is possible).

Court to be particularly vigilant. However, the defendants have asserted a state interest universally recognized as compelling and the Court has concluded that there is a sufficient factual basis to support an inference that the ordinance is narrowly drawn to further that interest. Thus, it is certainly possible to conclude that the Council was in fact motivated by a legitimate concern about protecting children and not by an illegitimate desire to suppress pornography. Moreover, it is possible to conclude that this is a case of mixed motive in which both legitimate and illegitimate concerns led to the adoption of the church/school spacing requirement. Since this is so, the Court cannot grant plaintiff's Motion for Summary Judgment on the ground that the Council was impermissibly motivated. Instead, a trial will be necessary on this issue.

 In the first amendment area, questions of impermissible motivation are determined by asking whether the impermissible motivation was a "substantial factor" in the absence of which the opposite decision would have been reached. *See Board of Educ., Island Trees, Etc. v. Pico,* 457 U.S. 853, 871, fn. 22, 102 S.Ct. 2799, 2810, fn. 22, 73 L.Ed.2d 435 (1982); *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If the impermissible motivation was a substantial factor in the decision-making process, then the decision was made in violation of the Constitution. If not, then the decision was lawful. In a situation where the evidentiary materials before the Court permit inferences which support either conclusion, summary judgment may not be granted. *See Board of Educ., Island Trees, Etc. v. Pico, supra,* 457 U.S. at 872–75, 102 S.Ct. at 2810–11 (summary judgment foreclosed where evidentiary materials raised genuine issue of fact relating to motivation); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1348–49 (9th Cir.1982) (in suit challenging zoning ordinance as unconstitutional, trial court erred in granting summary judgment where differing conclusions about defendants' motivation could be drawn from the

evidence). Thus, in this case, where the evidentiary materials raise a genuine issue of fact as to the Council's motivation, it would be clear legal error to grant plaintiff's motion for summary judgment on the ground that the Council was impermissibly motivated by a desire to suppress pornography.

Because there are factual issues relating to whether defendants were impermissibly motivated in passing the church/school spacing requirement and whether defendants' ordinances significantly restrict access to protected forms of first amendment activity, and because the Court concludes that there are sufficient facts in the record to infer that the church/school spacing requirement is a narrowly drawn ordinance which serves the substantial state interest of protecting children from the negative effects of adult entertainment centers, the Court rejects plaintiff's arguments based on the equal protection clause.

b. *The Due Process Clause*

In addition to plaintiff's claims based on the equal protection clause, plaintiff has raised several claims based on the due process clause of the fourteenth amendment. Plaintiff essentially argues that the church/school spacing requirement is "completely arbitrary and totally irrational," having no rational relationship with any legitimate state interest. Plaintiff bases this argument on the following allegations: First, plaintiff argues that, since the New Castle County Zoning ordinances were based on Detroit's ordinances and since Detroit saw no need for a church/school spacing requirement, a 2800 foot church/school spacing requirement is clearly unnecessary to serve the object of protecting neighborhoods from the negative effects of adult entertainment centers. Second, plaintiff argues that the straight-line method of measurement adopted by the County in enforcing the church/school spacing requirement is irrational since there may be intervening buildings, roads, highways and natural obstacles which prevent the transmission of negative effects

from the adult entertainment center. Third, plaintiff argues that the church/school spacing requirement is irrational since the County provides no spacing restrictions at all on other objectionable commercial uses which are free to locate near churches and schools. Finally, plaintiff argues that since churches may be located in commercial as well as residential areas, there is no rational relationship between the church/school spacing requirement and the state interest in protecting residential neighborhoods. *See* Plaintiff's Brief in Support of His Second Motion for Summary Judgment at 21–27 (Dkt. No. 77). The Court finds that none of these arguments are persuasive, and accordingly holds that the church/school spacing requirement does not violate the due process clause.

Before a zoning ordinance can be declared unconstitutional as violative of the due process clause of the fourteenth amendment, it must be shown to be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 513–14, 97 S.Ct. 1932, 1943, 52 L.Ed.2d 531 (1977) (Stevens, J., concurring). Since the Court has already concluded that there is a sufficient factual basis in this case to infer that the church/school spacing requirement is narrowly drawn to further the state interest of protecting children from the negative effects of adult entertainment centers, it seems clear that the church/school spacing requirement is not so arbitrary and irrational as to violate the due process clause.[27] However, the Court will address each of plaintiff's arguments in turn in order to make clear the substantial relationship between the church/school spacing requirement and the County's asserted goal of protecting children.

Plaintiff's first argument, premised on the fact that the ordinance at issue here goes beyond the seminal Detroit ordinance addressed in *Young v. American Mini-Theatres, supra,* is flawed by plaintiff's assumption that the church/school spacing requirement's goal is identical to the goal that motivated the passage of the Detroit ordinance. The asserted goal of the Detroit ordinance was the prevention of urban blight and neighborhood deterioration. The asserted goal of the church/school spacing requirement is the protection of children from the negative effects of adult entertainment centers. Since the goal is different, there is no basis for asserting that the County is limited to the methods adopted by Detroit. A church/school spacing requirement may not be necessary to prevent urban blight and neighborhood deterioration; but that is a wholly different matter from determining whether such a requirement is necessary to protect children attending schools and churches from the negative effects of adult entertainment centers. Accordingly, the Court rejects plaintiff's argument that the County should be circumscribed by Detroit's conclusion that a church/school spacing requirement was not necessary. Given the County's asserted interest in protecting children, the Court cannot conclude that a church/school spacing requirement is completely arbitrary and irrational.

Plaintiff's second argument, based on the distance of the church/school spacing requirement and its method of measurement,[28] is similarly flawed by

---

**27.** Most of plaintiff's arguments are predicated on the assumption that the County's asserted interest is the protection of neighborhoods. Indeed, plaintiff's briefs completely failed to address any of the constitutional issues in light of the County's asserted interest in the protection of children. As previously stated, if the County's asserted interest was simply the protection of neighborhoods, there is no doubt in the Court's mind that the church/school spacing requirement would not be substantially related

to that goal. However, since the facts support an inference that the County's goal in passing the church/school spacing requirement was the protection of children, the Court must address the due process issue with that goal in mind.

**28.** The ordinance itself does not explain how distances are measured. However, Richard C. Kiger, former Assistant County Attorney, has indicated to plaintiff that the County intends for distances to be measured from the nearest building line of the adult use to the nearest

plaintiff's assumption that the goal of the ordinance is the protection of neighborhoods. If the goal of the ordinance is the protection of children attending churches and schools, it is not arbitrary or irrational to impose a distance requirement,[29] measured in a straight line, insulating schools and churches from the undesirable effects of adult entertainment centers. Indeed, the Supreme Court has recently noted that zoning laws may be legitimately used to regulate the environment in the vicinity of schools and churches, given the valid interest schools and churches have in being insulated from certain kinds of commercial establishments. *See Larkin v. Grendel's Den, Inc., supra,* 103 S.Ct. at 509. Therefore, there can be little doubt that the imposition of a distance requirement protecting children attending schools and churches from the negative effects of adult entertainment centers is a rational exercise of the County's zoning power. Moreover, the County's interpretation that the distance should be measured in a straight line does not necessarily imply that the ordinance is arbitrary and irrational. As defendants point out, while measurement in a straight line may be irrational when that straight line passes through obstacles such as water courses, buildings or heavily-travelled divided highways, that danger can be

corrected by the New Castle County Code's allowance for variances from zoning ordinances when a literal interpretation of the ordinance would violate the spirit of the ordinance or cause substantial injustice.[30] In any event, plaintiff has not alleged that obstacles of the type described above are present here; nor has he alleged that his proposed location would be more than 2800 feet away from a church even if the distance were measured along city blocks rather than by a straight line. Therefore, the Court cannot conclude that the distance requirement and its method of measurement renders the church/school spacing requirement so arbitrary and irrational as to violate the due process clause.

██ Plaintiff's third argument, based on the County's alleged failure to provide spacing restrictions on certain other objectionable commercial uses which are free to locate near churches and schools, is incorrect because the County is not required to correct all of its zoning problems in order to rationally attack one zoning problem. *See Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972) (legislature may proceed one step at a time, addressing itself to the phase of the problem that seems most acute and neglecting other phases of the problem); *Wil-*

property line of the protected property in question. *See* Plaintiff's Brief in Support of His Second Motion for Summary Judgment at 24 (Dkt. No. 77).

**29.** As previously stated, the fact that the distance chosen was 2800 feet is not determinative of whether the ordinance is overbroad or so arbitrary as to violate the due process clause. *See Bayside Enterprises, Inc. v. Carson, supra,* at 701–02. The Court notes that 2800 feet, in light of the fact that children often walk to school and churches, is not a sufficiently great distance for it to be obvious that children face no risk of exposure to the negative effects of adult entertainment centers. As noted by defendants, state policy only requires transportation to be provided to those students residing in excess of one mile of a public school. *See* Defendant New Castle County's Answering Brief at 32 (Dkt. No. 82). Certainly, those children walking to and from churches and schools would face a significant risk of exposure to the negative effects of adult entertainment centers if they were permit-

ted to be located within 2800 feet of a school or church.

**30.** Section 23–85(3) of the New Castle County Code provides that the Board of Adjustment may:

Hear and decide in specific cases such variance from the provisions of any zoning ordinance, code or regulation that will not be contrary to the public interest, where, owing to special conditions or exceptional situation, a literal interpretation of the provisions of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map.

*See* Defendant New Castle County's Answering Brief at 32 (Dkt. No. 82).

*liamson v. Lee Optical Co. of Oklahoma,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (same). Thus, the County was entitled to focus on the problems caused by adult entertainment centers without dealing with the problems caused by other objectionable commercial uses. Moreover, as plaintiff concedes, the County does require certain uses, in addition to adult entertainment centers, to be spaced from churches and schools. *See* Plaintiff's Brief in Support of His Second Motion for Summary Judgment at 39, fn. 19 (Dkt. No. 77). The fact that there may be other objectionable uses, in addition to those already dealt with by the County, that are presently able to locate near churches and schools does not indicate that the passing of the church/school spacing requirement was arbitrary or irrational; it simply indicates that the County has chosen to attack its zoning problems "one step at a time." Consequently, the Court cannot conclude that the failure of the County to deal with other objectionable commercial uses that may locate near churches and schools renders the church/school spacing requirement violative of the due process clause.

Plaintiff's last argument, based on the premise that the church/school spacing requirement is irrational since churches may be located in commercial districts as well as residential districts, is incorrect because the plaintiff again assumes that the purpose of the ordinance is the protection of neighborhoods. As previously stated, if the County's asserted interest was simply the protection of neighborhoods, then there would be a substantial due process problem; however, since the facts support an inference that the County's goal in passing the church/school spacing requirement was the protection of children, and since children typically attend churches and schools regardless of whether they are located in residential or commercial districts, the Court cannot conclude that the ordinance is arbitrary and irrational. Having rejected all of plaintiff's arguments based on the due process clause, the Court holds that, in light of the asserted interest in protecting children from the negative effects of adult entertainment centers, the church/school spacing requirement is not arbitrary, irrational or substantially unrelated to that interest and, therefore, does not violate the due process clause.

### c. *The Establishment Clause*

■ Plaintiff's last constitutional challenge to the church/school spacing requirement is based on the establishment clause.[31] Plaintiff alleges that the passage of the church/school spacing requirement was motivated by a religious purpose and that the principal or primary effect of the requirement is the advancement of religion. Defendants respond by arguing that the church/school spacing requirement has a secular purpose and effect and creates no danger of excessive entanglement between church and state. For purposes of this motion, the Court agrees with defendants and finds that the church/school spacing requirement does not violate the establishment clause.

■ In determining whether statutes or ordinances are violative of the establishment clause, courts have traditionally referred to the three-part test enunciated by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). That three-part test requires the law in question to: (1) reflect a clearly secular legislative purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion. *Id.,* 403 U.S. at 612–13, 91 S.Ct. at 2111. While the Supreme Court has recently warned that this three-part test should not be mechanically applied in this sensitive area, the test remains a useful tool in establishment clause analysis. *See Lynch v. Donnelly,* —— U.S. ——, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). Applying this three-part test, it is clear that the

---

**31.** The establishment clause applies to states and their political subdivisions through the due process clause of the fourteenth amendment.

*See, e.g., Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 760, fn. 3, 93 S.Ct. 2955, 2959, fn. 3, 37 L.Ed.2d 948 (1973).

church/school spacing requirement has no religious purpose, creates no primary religious effect and causes no excessive entanglement between government and religion.

■ First, the County has asserted a compelling state interest in protecting children from the negative effects of adult entertainment centers as the purpose behind the church/school spacing requirement. As previously stated, there is a sufficient factual basis for the Court to infer, for purposes of this motion, that protecting children was in fact the actual purpose. Such a purpose is clearly secular and is sufficient to defeat plaintiff's claim that the County harbored religious motives. *See, e.g., Lynch v. Donnelly,* supra, 104 S.Ct. at 1362 (Government needs only *a* secular purpose; not "exclusively secular" objectives: "The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only where it has concluded there was no question that the statute or activity was motivated wholly by religious considerations."); *Larkin v. Grendel's Den, Inc., supra,* 103 S.Ct. at 509 (regulating environment in vicinity of churches and schools is a valid secular objective). Therefore, the Court concludes that the church/school spacing requirement passes the purpose part of the establishment clause test.

■ Second, the County has asserted that any benefit to religious groups provided by the church/school spacing requirement is at best incidental and indirect and that, therefore, the ordinance does not have the primary effect of advancing religion.[32] The Court agrees that the ordinance has a primarily secular effect. As Justice O'Connor has cogently argued, the crucial inquiry under the effect part of the establishment clause test is whether the government's action has the effect of communicating a message of government endorsement or disapproval of religion rather than a message of neutral accommodation. *See Lynch v. Donnelly, supra,* 104 S.Ct. at 1366 (O'Connor, J., concurring). It seems clear to the Court that the message conveyed by the passage of the church/school spacing requirement is simply that the County wished to protect children attending schools and churches from the negative effects of adult entertainment centers. That message reflects a secular interest in proper zoning laws, not an interest in promoting religious points of view. Indeed, it is difficult to see how religion is advanced at all by the ordinance in light of the fact that no financial support is involved, no sponsorship of religious activities is created, and no government involvement with religion is incurred. At best, the ordinance provides churches with an environment free from the negative effects of adult entertainment centers; but that benefit is provided by the ordinance to secular institutions (i.e., schools) as well. Therefore, any religious effect is incidental or indirect since it is well-established that the establishment clause does not bar the extension of general benefits to religious groups. *See, e.g., Widmar v. Vincent, supra,* 454 U.S. at 274–275, 102 S.Ct. at 277 (1981) ("If the Establishment Clause barred the extension of general benefits to religious groups, a church could not be protected by the police or fire departments, or have its public sidewalks kept in repair."). Since the message conveyed by the ordinance is not one of government endorsement of religion, since no financial support, sponsorship or government involvement with religion is created, and since the benefits of the ordinance are extended to both secular and religious institutions, the Court concludes that the church/school spacing requirement passes the effect part of the establishment clause test.[33]

---

**32.** The Supreme Court has consistently held that a religious organization's enjoyment of merely "incidental" benefits does not violate the prohibition against the "primary advancement" of religion. *Widmar v. Vincent,* 454 U.S. 263, 273, 102 S.Ct. 269, 276, 70 L.Ed.2d 440 (1981); *Committee for Public Education v. Nyquist, supra,* 413 U.S. at 771, 93 S.Ct. at 2965.

**33.** In reaching this conclusion, the Court notes that this case is clearly distinguishable from *Larkin v. Grendel's Den, Inc., supra.* Although both cases involve establishment clause chal-

■ Third, the County has asserted that the church/school spacing requirement creates no danger of excessive entanglement between church and state.[34] The Court agrees. As the Supreme Court has recently stated, the issue of excessive entanglement is a question of kind and degree, *Lynch v. Donnelly, supra,* 104 S.Ct. at 1364, with the courts typically focusing on the amount of financial support and day-to-day involvement provided by the government. Since the church/school spacing requirement requires no financial support or day-to-day involvement with religious groups, there is simply no basis for concluding that the ordinance creates an excessive entanglement problem. Therefore, the Court concludes that the church/school spacing requirement passes the excessive entanglement part of the establishment clause test. Since the Court has found that the church/school spacing requirement passes all three parts of the establishment clause test, and since the Court concludes that the government action here does not convey a message of government endorsement of religion, the Court rejects plaintiff's establishment clause claim.

Because the Court has rejected plaintiff's claims based on severability, equitable estoppel, the equal protection clause, the due process clause, and the establishment clause, and because the Court finds that there are material issues of fact which preclude summary judgment, plaintiff's motion for summary judgment is denied.

## D. PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

Plaintiff has requested the Court to issue a preliminary injunction even if the Court denies plaintiff's motion for summary judgment. *See, e.g., Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551, 554 (2d Cir.1970) (The fact that a motion for summary judgment has been denied is no bar to an application for a preliminary injunction; the issues on the motion are distinct and if there remains a need for relief during the pendency of the litigation, a preliminary injunction may be granted.). Plaintiff concedes that he must demonstrate both irreparable injury and a likelihood of success on the merits in order to obtain such relief. However, plaintiff contends that, in this first amendment case, irreparable harm is presumed and that a likelihood of success on the merits has already been demonstrated. *See* Plaintiff's Opening Brief in Support of His Second Motion for Summary Judgment at 28–30 (Dkt. No. 77). The Court cannot agree that plaintiff has demonstrated a likelihood of success on the merits since plaintiff has not even had an opportunity to present his factual evidence at a hearing on his request for a preliminary injunction; but the Court is willing, in accordance with Fed.R.Civ.P. 65(a)(2), to order the trial on the merits of plaintiff's claims to be advanced and consolidated with the hearing on plaintiff's request for a preliminary injunction.[35]

■ To support a preliminary injunction, the moving party must demon-

---

lenges to zoning laws attempting to regulate objectionable commercial uses within the vicinity of schools and churches, this case, in contrast to the *Larkin* case, does not involve any delegation of legislative power to religious institutions. Since the delegation of legislative authority on which the Supreme Court based its conclusion of an establishment clause violation is not present here, the Court's reasoning concerning the primary effect of the ordinance in *Larkin* does not apply.

**34.** Plaintiff has not, either in his briefs or at oral argument, even suggested that the church/school spacing requirement creates an excessive entanglement problem. Instead, plaintiff has focused solely on the purpose and effect parts of the establishment clause test. *See*

Plaintiff's Opening Brief in Support of His Second Motion for Summary Judgment at 17–20 (Dkt. No. 77).

**35.** Fed.R.Civ.P. 65(a)(2) provides:
(2) *Consolidation of Hearing with Trial on Merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the Court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes a part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed

strate that irreparable injury will occur if relief is not granted to maintain the status quo until a final adjudication on the merits can be made and that there is a reasonable probability of eventual success on the merits. In addition, the Court must weigh the possibility of harm to the non-moving party as well as to any other interested persons and, when relevant, harm to the public. *Continental Group, Inc. v. Amoco Chem. Corp.,* 614 F.2d 351, 356–57 (3d Cir.1980); *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 919–20 (3d Cir.1974). In this case, the Court has not yet had an opportunity to hear plaintiff's factual evidence on the remaining issues of impermissible motivation and significant restriction of access. Since these issues are of critical importance in determining plaintiff's likelihood of success on the merits of his claims, it would be premature to rule on plaintiff's request for a preliminary injunction.[36] Therefore, plaintiff's request for a preliminary injunction is denied at this time.

While the Court cannot grant plaintiff's request for preliminary injunctive relief at this time, the Court finds it appropriate, in light of the protracted nature of this litigation and the possibility that plaintiff may prevail on the issues of impermissible motivation and significant restriction of access, to advance the date for trial so that this matter may be finally determined. Accordingly, the Court will set the trial for the first available date on the Court's calendar convenient to counsel. This consolidation of the trial on the merits with the hearing on plaintiff's request for a preliminary in-

junction should present no problems to counsel since it is the Court's understanding that discovery is substantially completed and since the issues remaining in the case are few.[37] Moreover, such a consolidation is consistent with the purposes of Fed.R.Civ.P. 65(a)(2) since repetition of evidence will be avoided, the final disposition of this action will be hastened, and no delay in the disposition of plaintiff's request for a preliminary injunction will be caused.

In conclusion, the Court denies defendants' motion to dismiss and plaintiff's motion for summary judgment. A trial on the remaining factual issues will be scheduled on the first available date.

An Order will be entered consistent with this Opinion.

---

and applied to save the parties any rights they may have to trial by jury.

**36.** The Court agrees with plaintiff's statement that, where interference with first amendment rights is demonstrated to have occurred as a result of governmental action, irreparable harm is presumed. *See, e.g., Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (the loss of first amendment freedoms for even minimal periods of time constitutes irreparable injury); *414 Theatre Corp. v. Murphy,* 499 F.2d 1155, 1159 (2d Cir.1974) (discontinuance of first amendment right pending license determination is irreparable injury). However, acceptance of the above statement

does not preclude the necessity of a hearing on plaintiff's request for a preliminary injunction in order to consider the other factors, i.e., likelihood of success on the merits and the possibility of harm to others, relevant to a determination of the propriety of preliminary injunctive relief.

**37.** In accordance with this Opinion, the only factual issues remaining for determination are whether defendants were impermissibly motivated by a desire to suppress pornography and whether the zoning ordinances significantly restrict access to a protected form of first amendment activity.