**Francis R. MITCHELL and Bob's Discount Adult Books, Inc., a corporation of the State of Delaware, Plaintiffs,**

**v.**

**COMMISSION ON ADULT ENTERTAINMENT ESTABLISHMENTS OF THE STATE OF DELAWARE, an entity within the State of Delaware, Department of Administrative Services, Division of Business and Occupational Regulation, and Charles M. Oberly, III, in his official capacity as Attorney General of the State of Delaware, and State of Delaware, Defendants.**

Civ. A. No. 85–735 MMS.

United States District Court,
D. Delaware.

May 17, 1991.

---

Stephen F. Dryden, Wilmington, Del. (Lewis H. Robertson of Evans, Osborne & Kreizman, Little Silver, N.J., of counsel), for plaintiffs.

John J. Polk and David A. White, Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiffs filed for summary judgment on the issues which remain in this case after several years of litigation. At the request of the court, defendants have filed a cross-motion for summary judgment so that all remaining legal issues may be finally resolved. By a Memorandum Opinion and Order dated January 3, 1991, the court granted plaintiffs' summary judgment motion in part and held the remainder of the summary judgment motions in abeyance pending supplementation of the record. The summary judgment record has been supplemented. For the reasons which follow, the remainder of plaintiffs' motion for summary judgment will be granted in part and denied in part.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Absent a genuine issue of material fact, summary judgment will be entered

"against a party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The same burdens exist on cross-motions for summary judgment. *Peters Tp. School Dist. v. Hartford Acc. & Indem.*, 833 F.2d 32, 34 (3d Cir.1987).

The "very mission" of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R. Civ.P. 56 advisory committee note to the 1963 Amendment. If wisely applied, the summary judgment procedure will eliminate useless trials. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* § 56.02[1] (1988). However, summary judgment is not a substitute for trial and should not be used as a shortcut to avoid trial when a genuine issue of material fact remains in dispute.

As the United States Court of Appeals for the Third Circuit has noted, "[s]tatutory construction is a question of law ... and such questions ... are 'peculiarly appropriate for independent judicial assessment.'" *Dunat v. Hurney*, 297 F.2d 744, 746 (3d Cir.1961) (citations omitted) (quoting *O'Leary v. Brown–Pacific–Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951)). Accordingly, statutory construction is a proper subject for summary judgment. *See generally Americans Disabled for Accessible Public Transportation v. Skinner*, 881 F.2d 1184, 1191 n. 6 (3d Cir.1989); *Drayton v. United States*, 801 F.2d 117, 123 (3d Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1972, 95 L.Ed.2d 813 (1987).

BACKGROUND

The facts of this case are essentially undisputed. Plaintiffs in this case are Bob's Discount Adult Books, Inc. (referred to variously hereinafter as "Bob's Books", "Adult Books", and "Bob's") and its principal Francis R. Mitchell. Bob's Books is a Delaware corporation which owns and operates an establishment selling "books,

magazines, films and other sundries of an adult nature and [formerly providing] adult entertainment in the form of film, video and live presentations by means of coin-operated machines." Complaint at ¶ 6 (Docket No. 1). Prior to December 3, 1985, Bob's Books was licensed to rent and sell adult books and videos and to operate booths offering live adult entertainment pursuant to the licensing provisions of 24 Del.C. §§ 1601–29.

On May 29, 1985 Patricia Ann Toulson and Rhonda Gail Jones, two independent contractors engaged by Bob's Books to provide live entertainment, were arrested on the premises of Bob's Books and charged with conspiracy to commit prostitution. On June 11, 1985 Toulson pleaded guilty to the charge and was sentenced to a term of six months probation. On December 3, 1985 the Delaware Commission on Adult Entertainment Establishments (hereinafter the "Commission") revoked, pursuant to 24 Del.C. § 1617, the license of Bob's Books to maintain twelve coin-operated booths for the presentation of sexually-oriented live entertainment. The Commission did not revoke the license to sell and rent adult books and videos. The Commission also imposed a $10,000 fine on plaintiffs.

On December 11, 1985 Bob's Books and Francis R. Mitchell sought injunctive relief against the Commission in this court, alleging that Delaware's Adult Entertainment Establishments Act, 24 Del.C. §§ 1601–29 (1987 Repl.), in general, and section 1617 in particular, as written and applied are unconstitutional restraints on speech and speech-related conduct. Holding that plaintiffs were unlikely to succeed on the merits, this court denied plaintiffs' motion for a preliminary injunction on July 3, 1986. *Mitchell v. Commission on Adult Entertainment Establishments of the State of Delaware*, C.A. No. 85–735 MMS (D.Del. July 3, 1986), *aff'd*, 810 F.2d 1164 (3d Cir. 1987).

On October 2, 1987 plaintiffs filed a motion for summary judgment. The Commission filed a cross-motion for summary judgment. This court denied plaintiffs' motion and granted partial summary judgment in

favor of the Commission on April 14, 1988. *Mitchell v. Commission on Adult Entertainment Establishments of Delaware*, C.A. No. 85–735 MMS (D.Del. Apr. 14, 1988). In the summary judgment opinion, the court upheld the constitutionality of 24 Del.C. § 1617 (revocation of the permit), but failed to address squarely the constitutionality of the licensing scheme, 24 Del.C. §§ 1601–29, as a whole.

On October 13, 1987, Bob's Books applied for a new license. The Commission held a hearing on November 10, 1987, and has since taken no action regarding the application. On November 8, 1989, the court granted plaintiffs' motion to supplement their complaint to add claims related to the Commission's inaction following the November 10, 1987 hearing on the application for a new license.[1] Plaintiffs filed a supplemental complaint on November 17, 1989. Dkt. 67.

Plaintiffs have moved for summary judgment on the remainder of their claims. In their summary judgment motion, plaintiffs seek a declaratory judgment that the Act is unconstitutional under the First Amendment of the United States Constitution and injunctive relief prohibiting defendants from enforcing the Act against them. In the alternative, they challenge the validity of the $10,000 fine imposed against them in connection with the revocation of their license to operate the live entertainment booths pursuant to the authority granted the Commission by 24 Del.C. § 1618(c) and the requirement that they post a bond with surety of $10,000 in connection with their license application pursuant to 24 Del.C. § 1618(d). In addition, plaintiffs seek a declaration that the Commission's failure to act upon their October 13, 1987 application for an adult entertainment establishment license violated their rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. They seek injunctive relief ordering the Commission to issue them a license based upon the October 13, 1987 application.

On November 21, 1990, the court heard oral argument on plaintiffs' motion for summary judgment. During the course of oral argument, it became evident to the court that the legislative history of 24 Del.C. §§ 1601–29 would be relevant to plaintiffs' claim that the Act as a whole is constitutionally invalid for lack of an adequate factual basis. Sessions of the Delaware General Assembly are tape recorded. These recordings are not transcribed. Rather, the tape recordings are stored in Dover, Delaware. The court ordered counsel for defendants to produce a transcript of the tapes of General Assembly sessions relevant to passage of the Adult Entertainment Establishments Act for inclusion in the summary judgment record.

By a Memorandum Opinion and Order dated January 3, 1991, the court granted plaintiffs' summary judgment motion with respect to subsections 1618(c) and (d) and held decision on the remainder of plaintiffs' claims in abeyance pending submission of the transcripts of the relevant General Assembly debates. The tapes have been submitted, and the summary judgment record is complete. This Opinion constitutes the remainder of the court's decision on plaintiffs' motion for summary judgment. For the reasons which follow, plaintiffs' summary judgment motion will be denied and defendants' cross-motion granted on the constitutional challenge to the Act as a whole. Plaintiffs' motion for summary judgment will be granted and defendants' cross-motion denied on defendant Commission's failure to act upon plaintiffs' October 13, 1987 application. The court will not, however, grant the plaintiffs' request that it order the Commission to issue a license to plaintiffs based upon their October 13, 1987 application.

ANALYSIS

*1. Plaintiffs' First Amendment Challenge to the Constitutional Validity of the Act as a Whole*

■ Plaintiffs' central allegation throughout these proceedings has been

---

**1.** At the same time, the court denied plaintiffs' motion to amend the original complaint to clarify claims already presented to the court in the preliminary injunction and previous summary judgment proceedings.

that the licensing scheme established by the Adult Entertainment Establishments Act is invalid under the United States Constitution. In a prior opinion, the court found that the section of the Act authorizing revocation of plaintiffs' license to operate an adult entertainment establishment was valid under the First and Fourteenth Amendments of the United States Constitution. Plaintiffs in this summary judgment motion raise the question of whether the entire regulatory scheme set forth in the Act as a whole is constitutionally invalid, an issue not decided in the court's prior opinion. *See Mitchell v. Commission on Adult Entertainment Establishments of Delaware*, C.A. No. 85–735 MMS slip op. at 12 n. 6 (D.Del. Apr. 14, 1988).

Plaintiffs launch a two-prong attack against the constitutionality of the Act as a whole. First, they argue that the Act as a whole is a content-specific regulation of speech. It "has long [been] held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986) (citing *Carey v. Brown*, 447 U.S. 455, 462–63 & n. 7, 100 S.Ct. 2286, 2291 & n. 7, 65 L.Ed.2d 263 (1980); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 98–99, 92 S.Ct. 2286, 2289, 2291–2292, 33 L.Ed.2d 212 (1972)). Plaintiffs argue that the licensing scheme is content-specific because the Act singles out establishments for licensing based solely upon the content of the entertainment presented.[2] Defendants, on the other hand, assert that the Act should be analyzed as a content-neutral time, place, and manner regulation.

On appeal from this court's denial of plaintiffs' motion for a preliminary injunction, the Court of Appeals held "We find that Delaware's Adult Entertainment Establishments Act ... is content-neutral,

since it aims not at the content of adult entertainment but at the secondary effects associated with it, i.e., the commission of various sex-related crimes." *Mitchell v. Commission of Adult Entertainment*, No. 86–5519, slip op. at 8–9 (3d Cir. Feb. 24, 1987), *aff'g, Mitchell v. Commission on Adult Entertainment Establishments*, C.A. No. 85–735 MMS (D.Del. July 3, 1986). Defendants argue that the Third Circuit appellate court's prior holding in this case is controlling as the law of the case.

Although the appellate court's previous holding is certainly persuasive, it is not the law of the case. The appellate court made its ruling on a motion for a preliminary injunction. A motion for preliminary injunction is frequently heard on a less complete factual record than either a motion for summary judgment or trial on the merits. The standards for a preliminary injunction also differ from those which govern at the summary judgment or trial stage. Consequently, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). This court should not rely solely upon the law of the case doctrine when the prior decision was rendered in the context of a motion for preliminary injunction, lest the court "[i]mproperly equate[ ] 'likelihood of success' with 'success' " on the merits. *Id.* at 394, 101 S.Ct. at 1833. Given the present procedural posture of the motions for summary judgment, the prior decision of the Third Circuit Court of Appeals, while enlightening, is not the law of the case.

Nonetheless, the court is persuaded that the Adult Entertainment Establishments Act is not a presumptively invalid content-specific regulation of speech. Instead, the Act should be analyzed as a content-neutral

---

**2.** This court and the Third Circuit Court of Appeals have assumed throughout this litigation that the live entertainment presented by Bob's Books and regulated by the Act is a form of speech protected by the First Amendment. *E.g., Mitchell v. Commission on Adult Entertainment Establishments of Delaware*, C.A. No. 85–735 MMS slip op. at 5 (D.Del. Apr. 14, 1988). The

court notes, however, that the United States Supreme Court has heard oral argument on the issue of whether nude dancing is speech protected by the First Amendment. *See Barnes v. Glen Theatre, Inc.*, 59 U.S.L.W. 3473 (U.S. Jan. 15, 1991) (No. 90–26) (argument heard Jan. 8, 1991).

time, place, and manner regulation. The United States Supreme Court has held that state and local governments may single out for time, place, and manner regulation certain establishments on the basis of the speech presented therein so long as the regulation is aimed not at the content of the communication but rather at its secondary effects. *E.g., City of Renton*, 475 U.S. at 50, 106 S.Ct. at 930; *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70–71, 96 S.Ct. 2440, 2452–2453, 49 L.Ed.2d 310 (1976) (plurality opinion) ("Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.").

The central feature of the Adult Entertainment Establishments Act is the requirement that operators of adult entertainment establishments obtain an operating license. 24 Del.C. § 1606(a). The primary prerequisite to obtaining such a license is completion of a series of forms under oath detailing the applicant's name, address, and other identifying information. In addition, similar information must be supplied for persons having responsibility for day-to-day management of the establishment and, if the applicant is a partnership or corporation, for each partner or principal (10 percent or more) shareholder. *See id.* § 1613. The purpose of the licensing scheme is set forth in the Act's Statement of Purpose:

(a) It is the finding of the General Assembly that the health, safety and welfare of the people of the State are imperiled by the increasing incidence of the crimes of obscenity, prostitution and of offenses related thereto. The General Assembly finds that the foregoing crimes are principally facilitated by the widespread abuse of legitimate occupations and establishments, to wit, adult entertainment establishments. It is the further finding of the General Assembly that existing criminal penalties for the foregoing offenses have been rendered ineffective by the active concealment of the identities of the individuals who create, control and promote such businesses;

by the failure of these individuals and businesses to exercise adequate control and supervision over the activities of their employees; and by the active promotion of prostitution and obscenity by these individuals and businesses for their own financial gain.

(b) To the end of furthering the substantial and compelling interest of the people of this State in being free of the crimes of obscenity, prostitution and its companion offenses, and in order to promote the health, safety and welfare, the General Assembly does hereby act.

24 Del.C. § 1601.

The fact that the Act singles out for licensing establishments which purvey material arguably protected by the First Amendment does not mean that the Act regulates the content of the materials purveyed. In *City of Renton*, the United States Supreme Court upheld a zoning ordinance specifically regulating adult movie theaters. The court found the zoning ordinance was a content-neutral time, place, and manner restriction because it was aimed at the secondary effects of adult movie theaters on the surrounding neighborhood and not at the content of the films displayed. *City of Renton*, 475 U.S. at 49, 106 S.Ct. at 929 ("[A]t least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations.") (footnote omitted). Likewise, a plurality of Supreme Court Justices upheld as a legitimate exercise of the police power a Detroit zoning ordinance which dispersed adult theaters. *Young v. American Mini Theatres, Inc.*, 427 U.S. at 70–71, 96 S.Ct. at 2452–2453.

Section 1601 clearly states that the purpose of the Act is to promote enforcement of the obscenity and prostitution laws by preventing concealment of the identities of those who facilitate these crimes through abuse of legitimate occupations such as adult entertainment establishments and massage parlors. The Commission on

Adult Entertainment is not empowered to review the content of materials purveyed by licensees. It exercises no censorship. The predominant intent of the Act is to curb the secondary effects arising from the misuse of adult entertainment establishments, to wit, commission of the crimes of obscenity and prostitution. The Adult Entertainment Establishments Act, like the zoning regulations in *City of Renton* and *Young*, is not a presumptively invalid content-specific regulation of speech. The Act should instead be analyzed as a content-neutral time, place, and manner regulation.

Plaintiffs' second argument is that, even if analyzed as a content-neutral time, place, and manner regulation, the Adult Entertainment Establishments Act fails to withstand constitutional scrutiny. In order to pass First Amendment muster, a time, place, and manner regulation must be narrowly tailored to serve a substantial governmental interest, and it must allow for reasonable alternative avenues of communication. *City of Renton*, 475 U.S. at 49–54, 106 S.Ct. at 929–932; *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981).

It is beyond cavil that the curtailment of crimes such as obscenity and prostitution and other negative secondary effects of adult entertainment establishments constitutes the pursuit of a substantial state interest. *See Young*, 427 U.S. at 71, 96 S.Ct. at 2452 (plurality opinion) ("[T]he city's interest in attempting to preserve the quality of urban life [from the secondary effects of adult movie theatres] is one that must be accorded high respect."); *Id.* at 75, 96 S.Ct. at 2454 (Powell, J., concurring) ("The purpose of preventing the deterioration of commercial neighborhoods was certainly within the concept of the public welfare that defines the limits of the police power."); *Mitchell v. Commission of Adult Entertainment Establishments of the State of Delaware*, No. 86–5519, slip op. at 4 (3d Cir. Jan. 30, 1987) ("The effort to prevent these crimes [obscenity, prostitution & related offenses] is clearly within the police power of the state legislature."); *Krueger v. City of Pensacola*, 759 F.2d 851, 855 (11th Cir.1985) ("[W]e agree that the goal of crime prevention is both legitimate and significant enough to justify such a regulation [banning topless dancing in establishments which serve alcohol]. . . .").

The Act is also narrowly tailored to further this state interest, and it leaves open adequate channels of communication. The Supreme Court has emphasized that the governmental interest served and the method utilized to further that interest must be proportionate to the burden imposed upon activities protected by the First Amendment. In *Young*, for example, the plurality stated that the ordinance was "nothing more than a limitation on the place where adult films may be exhibited," *Young*, 427 U.S. at 71, 96 S.Ct. at 2453 (plurality), and further noted that "[t]he situation would be quite different if the ordinance had the effect of suppressing or greatly restricting access to lawful speech." *Id.* at 71 n. 35, 96 S.Ct. at 2453 n. 35 (plurality). In his concurring opinion, Justice Powell emphasized two inquiries: "(i) Does the ordinance impose any content limitation on the creators of adult movies or their ability to make them available to whom they desire, and (ii) does it restrict in any significant way the viewing of these movies by those who desire to see them?" *Id.* at 78, 96 S.Ct. at 2456 (Powell, J., concurring). Justice Powell concluded that in the case of the Detroit ordinance before the Court, the answer to both of these questions was negative.

When an ordinance imposes a substantially greater burden on protected activity, the Court requires a more substantial justification. The ordinance at issue in *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), prohibited the presentation of *all* live entertainment—nude or otherwise. *Id.* at 65, 101 S.Ct. at 2180. Consequently, the Mt. Ephraim ordinance imposed a more significant burden on protected activity than did the ordinance before the Court in *Young*. The Court distinguished *Young*, noting that the Detroit ordinance merely regulated the location of theaters and consequently "imposed a minimal burden on protected speech." *Id.* 452 U.S. at 71, 101 S.Ct. at

2184. The ordinance at issue in *Schad*, however, imposed a "substantial restriction on protected activity." *Id.* 452 U.S. at 72, 101 S.Ct. at 2184. The justifications offered by Mt. Ephraim were only that the borough wanted to avoid minor secondary effects of live entertainment, such as trash, parking, etc., *id.* at 73, 101 S.Ct. at 2185, and the borough's desire to create a minimal commercial area suited to the "immediate needs" of its residents. *Id.* at 72, 101 S.Ct. at 2185. It is not surprising, therefore, that the Court found the substantial burden imposed upon the exercise of protected activity by Mt. Ephraim's ordinance out of proportion with and not narrowly tailored to further the interest it was intended to serve.

In this case, plaintiffs have offered no evidence that the licensing scheme tends to cause "any significant overall curtailment of [adult entertainment] presentations or the opportunity for a message to reach an audience." *Young*, 427 U.S. at 79, 96 S.Ct. at 2456 (Powell, J., concurring). The Adult Entertainment Establishments Act has "silenced no message, has invoked no censorship, and has imposed no limitation upon those who [patronize adult entertainment establishments]." *Id.* at 78, 96 S.Ct. at 2456 (Powell, J., concurring). There is no evidence that the information requested from prospective licensees is complex or that completion of the forms is burdensome. *See State v. Huddleston*, 412 A.2d 1148, 1152 (Del.Super.1980). In the words of the Delaware Superior Court, "[g]iven the important public interest expressed in the Act's purpose of identifying those persons believed to control or promote the crimes of obscenity, prostitution and the like, the minimal licensing requirements which the Act imposes on such persons seems entirely reasonable." *State v. Bowman*, Del.Super., Nos. IN81–08–0023, IN81–08–1124 & IN81–08–1127, Walsh, J. (June 23, 1982) (slip opinion) (available on LEXIS, States lib., DEL file). The court finds that the minimal burden imposed by the Act upon purveyors of adult entertainment is narrowly tailored to the substantial governmental interest the Act is designed to further, and since it does not prohibit or impede presentation of live adult entertainment, leaves open adequate alternative means of communication.

Nevertheless, plaintiffs argue that the Act is invalid because it lacks an adequate factual basis. While plaintiffs are correct that a legitimate time, place, and manner regulation must be supported by some factual basis, *Amico v. New Castle County*, 101 F.R.D. 472, 487 (D.Del.1984), *aff'd without op.*, 770 F.2d 1066 (3d Cir.1985), they misconstrue the nature of the inquiry. Determination of whether there exists an adequate factual basis is *not* an independent inquiry consigned to a legislative and judicial vacuum. Rather, it is a factor to be considered in determining whether a regulation is narrowly tailored to serve a substantial interest and whether the regulation leaves open sufficient alternative channels of communication. For example, the court may look to the factual basis to assure itself that the governmental interest purportedly served is neither pretextual nor speculative. *See City of Renton*, 475 U.S. at 50–52, 106 S.Ct. at 930–931. The inquiry may also be required to support a finding that the regulation is narrowly drawn, *Amico*, 101 F.R.D. at 486, or that it is likely to produce the desired results upon the secondary effects its seeks to alleviate. *Young*, 427 U.S. at 71, 96 S.Ct. at 2452 (plurality).

Indeed, while plaintiffs cite numerous cases in which courts have referred to an inadequate factual basis as the justification for invalidating a zoning or regulatory scheme on First Amendment grounds, in nearly every case cited by plaintiffs the regulation in question failed to leave open adequate alternative channels of communication. As previously discussed, the zoning ordinance struck down by the United States Supreme Court in *Schad* failed to permit nude dancing *anywhere* in the borough, thus leaving *no* alternative channels of communication in the borough. Likewise, the ordinance struck down in *Leverett v. City of Pinellas Park*, 775 F.2d 1536, 1540 (11th Cir.1985) (per curiam), prohibited nude dancing in *any* commercial establishment. *See also Krueger v. City of*

*Pensacola,* 759 F.2d 851, 852 (11th Cir. 1985) (ordinance banning topless dancing in *any* establishment serving alcohol); *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1214 (5th Cir.1982) (ordinance had the effect of banning rather than dispersing theatres and made it "all but impossible" to open a new theater); *Keego Harbor Co. v. Keego Harbor,* 657 F.2d 94 (6th Cir.1981) (ordinance effectively zoned adult theaters out of the city); *North Street Book Shoppe, Inc. v. Village of Endicott,* 582 F.Supp. 1428 (N.D.N.Y.1984) (ordinance limited only adult bookstore in the village to two undesirable locations in industrial area, thus limiting access to speech); *CLR Corp. v. Henline,* 520 F.Supp. 760, 767–68 (W.D.Mich.1981), *aff'd,* 702 F.2d 637 (6th Cir.1983) (ordinance limited available location so drastically that there could only exist at one time four establishments in a 25 square mile city of 62,000, a situation considered too restrictive of access to speech).

In other cases relied upon by plaintiffs, ordinances were struck down not because of an inadequate factual basis, but because they invested administrative officials with too much discretion, *754 Orange Avenue, Inc. v. City of West Haven,* 761 F.2d 105, 111–12 (2d Cir.1985) (no standard for issuance or revocation of license or judicial review and ordinance lacked alternative channels of communication), or because the legislating body failed to demonstrate a significant state interest, *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1348–49 (9th Cir.1982) (question of fact as to whether ordinance served a substantial interest other than suppression of speech), or the ordinance had an unacceptable retroactive effect on establishments already in existence, *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 662–63 (8th Cir. 1981) (substantial evidence to suggest ordi-

nance aimed at a particular establishment rather than at secondary effects prospectively); *Ellwest Stereo Theaters, Inc. of Texas v. Byrd,* 472 F.Supp. 702 (N.D.Tex. 1979) (ordinance had the effect of closing down an operating establishment without adequate procedures).

The court finds, from examination of the debates of the General Assembly and the provisions of the Act itself, that the predominant intent of the Adult Entertainment Establishments Act was the prevention of the crimes of obscenity and prostitution by eliminating concealment of the identities of persons who facilitate the commission of such crimes through abuse of operate adult entertainment establishments and other entities. The court notes that its finding on the intent of the Act is in accord with the holdings of the state courts, including the Delaware Supreme Court.[3] *Richardson v. Wile,* 535 A.2d 1346, 1349 (Del.Supr.1988) (holding that the purpose of the Act is "the reduction and prevention of the crimes of obscenity and prostitution as facilitated by the widespread abuse of legitimate occupations such as adult entertainment establishments"); *State v. Bowman,* Nos. IN81–08–0023; IN81–08–1124 & IN81–0801127, Walsh, J. (Del.Super. June 23, 1982) (slip opinion) (available on LEXIS, States lib., DEL file) ("The section reflects the legislative concern with the 'active concealment' of the identities of individuals creating, controlling and promoting adult entertainment establishments"); *State v. Huddleston,* 412 A.2d 1148, 1157 (Del.Super.1980) ("[The General Assembly] has further ... determined that 'active concealment of identities' of those who operate and control commercial obscenity establishments has handicapped law enforcement.... The licensing of adult book stores is an attempt to remedy that prob-

**3.** During the General Assembly debates, certain legislators and witnesses expressed a hope that enactment of the Adult Entertainment Establishments Act would decrease the number of adult entertainment establishments operating in Delaware. The debates taken as a whole, along with the statement of purpose in section 1601 and the provisions and mechanics of the licensing scheme itself, convince the court that these statements by some legislators and witnesses do not reflect the predominate purpose of the Act. *See City of Renton,* 475 U.S. at 47–48, 106 S.Ct. at 928–929; *United States v. O'Brien,* 391 U.S. 367, 384, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it....").

lem."). The court also finds that this intent is neither pretextual nor speculative.

The General Assembly consulted then-Deputy Attorney General Charles M. Oberly IV, who was at the time the Chief State Criminal Prosecutor. Oberly discussed the difficulties of prosecuting operators of adult entertainment establishments for crimes, such as obscenity, because the operators used pseudonyms. Transcript of the Debates of the Delaware General Assembly leading to passage of the Adult Entertainment Establishments Act, 24 Del.C. §§ 1601 *et seq.*, House Debate on House Bill 407 at 55 (June 16, 1977) (entered into the record of this case as Dkt. 95) (cited hereinafter by Chambers Debate, Bill Number, Page Number, and Date). Oberly also described an incident wherein prosecutors were unable to identify the source of a book called "Lollitots," which included child pornography. *Id.*

With respect to massage parlors, which are also licensed under the Act, a lobbyist for the massage parlors admitted that the massagists frequently used pseudonyms such as "Candy" and "Flame," House Debate on House Bill 407 at 57 (June 15, 1977), and he admitted that prostitution did occur on some premises. *Id.* at 69 & 74.

As part of the debate regarding inclusion of adult entertainment establishments in the licensing provisions, Representative Petrilli, a former member of the Commission on Adult Entertainment, informed the House of Representatives that the intent of the licensing was to reveal identities of the owners of these establishments in the event of future prosecution. House Debate on Senate Bills 402 & 403 at 8–11 (June 10, 1982). Petrilli stated that police investigations of obscenity and prostitution were hampered by an inability to identify the operators or managers of certain establishments. *Id.* at 17–18.

The attorney for the House cited other reasons in support of passage:

I think it was just—they also discovered in simple enforcement a limitation of identifying who was a controlling interest in a given establishment and that's the reason for the extensive licensing information which you find later on in the body of the bill ....

[T]hey would find a show or ... an establishment open up under one corporate or whatever name with interlocking director ... problems, and because there was not a required information process under the old law, that they would never be able to find who had been an owner or operator of a previous establishment....

Senate Debate on House Bill 1022 at 9–10 (June 30, 1980).

While the cases have indicated that some factual basis may be necessary to show that a time, place, and manner regulation is narrowly tailored to serve a substantial state interest, the courts have exercised a wide degree of latitude as to the precise quantity and quality of factual support necessary. *Amico*, 101 F.R.D. at 487. In *City of Renton*, the Court gave some general guidance as to the degree of necessary factual support:

The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the City relies upon is reasonably believed to be relevant to the problem that the city addresses.

*City of Renton*, 475 U.S. at 51–52, 106 S.Ct. at 930–931. *Accord, Amico*, 101 F.R.D. at 487 n. 22 (before enacting zoning ordinance, county council did not have to wait for local children to suffer from negative secondary effects of adult entertainment establishments, but instead could rely on information and experience of other legislative bodies).

In this case, the General Assembly had before it statements by a deputy attorney general and a former member of the Commission indicating a need to prevent concealment of the identities of owners of adult entertainment establishments in order to facilitate prosecution for crimes such as obscenity and prostitution. This evidence is relevant to the need to address the secondary effects of adult entertainment establishments. The plaintiffs have not entered into the summary judgment record

938

any facts which contradict the legislative assumptions stated in the statement of purpose (section 1601). *See New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250, 1257 (3d Cir.1986), *cert. denied sub nom. Township of Piscataway v. New Jersey Citizen Action*, 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 186 (1987) (legislative assumptions underlying an ordinance burdening free speech may be overturned when contradicted by the record). Quite the contrary, the very facts of this case support section 1601's assumption that the operation of an adult entertainment establishment may tend to facilitate certain crimes, such as prostitution. At least one Delaware state court has held that there was factual support for the legislative assumptions underlying the statement of purpose. *See Huddleston*, 412 A.2d at 1157. It is concluded that there is an adequate factual basis for the Act.

The court holds the Act is narrowly tailored to further its stated purpose. The Act circumscribes the types of establishments it seeks to regulate. It imposes no censorship, and the information required is not unduly burdensome. The court notes that the legislators considered more onerous licensing requirements, such as fingerprinting license applicants, which did not make their way into the final version of the Act. *E.g.,* House Debate on House Bill 407 at 25–29 (June 16, 1977). The Act does not impose any limitation on the content of adult entertainment or upon the ability to present the entertainment to an audience beyond the restrictions of the obscenity laws. It also does not restrict, with the exception of other laws applying to minors, the viewing of this type of entertainment by those who wish to see it. *See generally Young*, 427 U.S. at 78, 96 S.Ct. at 2456 (Powell, J., concurring). The court need not pass upon whether this particular scheme is one the most likely to be effective. State and local governments should be granted latitude to experiment with solutions to serious problems such as increased incidence of obscenity and prostitution. *See Young*, 427 U.S. at 71, 96 S.Ct. at 2452 (plurality).

In like vein, the court holds that the Act leaves open adequate channels of communication for the type of speech at issue. Plaintiffs have presented no evidence whatsoever that the Act has restricted significantly presentation of adult entertainment. In fact, plaintiffs have failed to demonstrate any instance, beyond the facts of this case, in which an adult entertainment establishment was prevented from opening or ceased to operate because of the provisions of the Act. Indeed, between March 1978 and February 1980, the Commission had received and approved all license applications within fifteen days. *Huddleston*, 412 A.2d at 1152. Plaintiffs have offered no evidence, other than their own case, to show that this trend has changed significantly since 1980.

In sum, the court finds the factual basis in the record adequate to support a finding that the Adult Entertainment Establishments Act is a valid content-neutral time, place, and manner regulation. The court finds the Act is narrowly tailored to further a substantial governmental interest and leaves open adequate channels of communication. That part of plaintiffs' summary judgment motion seeking a declaration that the Act as a whole is invalid and injunctive relief prohibiting enforcement of the Act will be denied. The relevant portion of defendants' cross-motion for summary judgment will be granted.

*2. The Commission's Failure to Act Upon Plaintiffs' October 13, 1987 License Application Subsequent to the November 10, 1987 Hearing*

■ On October 13, 1987, nearly two years subsequent to the revocation of its original license to present live adult entertainment, Bob's Books applied for a new license. The Commission held a hearing on November 10, 1987, and has since taken no action regarding the application. Plaintiffs assert that the Commission's failure to act upon their license application for more than three years violates their First Amendment rights. They ask the court to order defendants to issue them a license pursuant to the October 13, 1987 application.

Plaintiffs assert that they filed a completed application and paid the relevant application fee. This, according to plaintiffs, entitles them to a license. Defendants, on the other hand, argue vigorously that an operator of an adult entertainment establishment whose license has been revoked due to a violation of the Act is not entitled to a new license for the same premises. Regardless of whether plaintiffs are entitled to a license pursuant to the October 13, 1987 application, the court finds that the Commission's inaction has resulted in violation of plaintiffs' constitutional rights.

This issue is governed by the recent Supreme Court case *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). *FW/PBS, Inc.* involved a Dallas ordinance similar to the Adult Entertainment Establishments Act in that it regulated sexually oriented businesses. The Dallas ordinance was aimed at the eradication of the secondary effects of sexually oriented businesses, including increased crime and urban blight. *Id.* 110 S.Ct. at 602. In *FW/PBS, Inc.*, the Court found the Dallas ordinance was facially invalid because it failed to place a limit on the time within which the license must be issued or the license application denied.[4] *Id.* 110 S.Ct. at 605. In so holding, the Court followed its own precedent in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), which, in the context of a motion picture censorship law, held that "the exhibitor must be assured ... that the censor will, within a specified brief period, either issue the license or go to court to restrain showing the film." *Id.* at 58–59, 85 S.Ct. at 739.

The Court in *FW/PBS, Inc.* reasoned that the period for a licensing decision affecting activities protected by the First Amendment should not be open-ended because "where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion." *FW/PBS, Inc.*, 110 S.Ct. at 605. Consequently, the Court held that "a license for a

First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." *Id.* at 606.

Under the teachings of *FW/PBS, Inc.*, the Adult Entertainment Establishments Act is facially valid because it provides a time limit within which the Commission must render a decision regarding a license application or revocation. Section 1619(c) mandates that the Commission "*shall* give written notice, accompanied by its findings of fact and conclusions of law, of its action within 10 days of [a] hearing...." 24 Del.C. § 1619(c) (emphasis added). Although defendants argue plaintiffs were not entitled to a license, the Commission's silence cannot be construed as a prompt denial of the license under either the Act itself or under the principles of *FW/PBS, Inc.* and *Freedman*. This is demonstrated vividly by the fact that the Commission's failure to take action has prevented plaintiffs from appealing the denial of a license and litigating their entitlement to a license under the Act before the state courts. 24 Del.C. § 1619(d) (providing that aggrieved licensees and applicants may within 20 days of a decision by the Commission appeal the denial or revocation of a license to the Delaware Superior Court). Consequently, that portion of plaintiffs' summary judgment motion seeking a declaration that the Commission's failure to act upon their license application violated their constitutional rights will be granted.

■ The court will not, however, order the Commission to issue a license to plaintiffs as plaintiffs have requested. Defendants' assertion that plaintiffs are not entitled to a new license for the same location because of the previous license revocation raises an interpretation of a state regulatory scheme which is best left to the state courts. The Act provides a mechanism for aggrieved applicants to appeal unfavorable decisions by the Commission to the Dela-

---

**4.** The court notes that the Supreme Court in *FW/PBS, Inc.* did not reach the issues of whether the Dallas ordinance was a content-neutral time, place, and manner regulation or whether the activities regulated were protected speech.

ware Superior Court. 24 Del.C. § 1619(d). This court will therefore order the Commission to issue within ten days of entry of the Order accompanying this Opinion, a decision on plaintiffs' October 13, 1987 license application, stating its findings of fact and conclusions of law in conformity with section 1619(c) of the Act. If the Commission's decision is unfavorable, plaintiffs will be able to appeal the decision to the state courts pursuant to section 1619(d).

An appropriate order will issue.